844 P.2d 688

**In the Matter of William J. TWAY, Attorney at Law.**

**Idaho State Bar, Plaintiff,**

v.

**William J. Tway, Defendant.**

**No. 18695.**

Supreme Court of Idaho,
Boise, November 1992 Term.

Dec. 18, 1992.

Ellison M. Matthews, Boise, for defendant.

Michael J. Oths, Bar Counsel, Boise, for plaintiff.

PER CURIAM.

## I. BACKGROUND

The defendant, William J. Tway, who initiated his practice of law in the State of Idaho in 1966, has admitted to four violations of the Idaho Rules of Professional Conduct (IRPC).

1. Tway removed $1,221.24 from his client trust account and applied those monies for purposes not related to the client and without the client's permission. Tway admits the above conduct violated IRPC 1.15[1] and IRPC 8.4(c).[2]

---

1. IRPC 1.15 provides, in relevant part that:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Idaho. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest,

a lawyer shall promptly notify the client or third person. Except as stated in this Rule or as otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver any funds or other property that the client or third party is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

2. IRPC 8.4(c) provides that "[i]t is professional misconduct for a lawyer to: ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

2. Tway removed $11,648.58 from his trust account and applied said funds to pay a secured note, done in order to avoid foreclosure on his home. Tway concedes that he did so without authorization and has admitted that the above conduct constituted a violation of IRPC 1.15 and IRPC 8.4(c).

3. Tway made a misleading statement to a court during his representation of a client during a probation revocation proceeding. The alleged probation violation was that Tway's client had failed to pay the restitution ordered by the court. The client had delivered to Tway the sum of $17,000, with which to make restitution. However, the client apparently decided to use that fund for application on Tway's fee in an appellate proceeding challenging the legality of the restitution order, and the money was transferred from Tway's trust account to his personal account.

At the probation violation hearing, on that court's inquiry as to whether the client had any money available for partial restitution, Tway responded that the money was in trust. In fact, the money had been removed from the client trust account approximately four months earlier. Tway admits that this conduct constituted a violation of IRPC 3.3.[3]

4. Tway successfully represented a client on a negligence claim and obtained $68,000, by way of a settlement. Tway collected his fees out of that amount and remitted a portion of the remainder to the client, but he retained the sum of $17,048 as a loan from the client to Tway. The client agreed to this arrangement. However, Tway did not advise the client or disclose to him the terms by which Tway was to retain the sum of $17,048. Additionally, the client was not advised that he was entitled to seek the advice of independent counsel before agreeing to such loan transaction; moreover, there was no written, signed agreement memorializing the retention of the $17,048 as a loan to Tway.

After Tway repaid approximately $7,000, the client agreed to accept a portion of Tway's interest in a Nevada business in lieu of repayment of the balance of the loan. Tway's interest in the Nevada business was not evidenced by any writing nor was there any writing prepared to evidence any transfer of the interest to the client. Further, there is no evidence that Tway had any ownership interest in the Nevada business at the time of the alleged transfer.

Upon the death of the client, the surviving spouse made demand upon Tway for the return of the amount due owing, despite the agreement between the deceased spouse and Tway. Tway did not insist on compliance with the terms of the loan as allegedly agreed to by Tway and his deceased client; instead, he executed an agreement with the surviving spouse on February 14, 1991, agreeing to pay the sum of $10,668, together with interest at 8 percent per annum.

Tway admits that this conduct constituted a violation of IRPC 1.8.[4]

On September 10, 1991, a hearing was held before a committee appointed by this Court. Based on the testimony presented at the hearing and a post-hearing affidavit, the committee found that:

(a) Tway has enjoyed a good reputation in the legal community and the community

---

3. IRPC 3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of material fact or law to [a] tribunal."

4. IRPC 1.8 provides in relevant part that:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advise of independent counsel in the transaction; and

(3) the client consents in writing thereto.

in general, and his reputation is one of truthfulness and honesty.

(b) The acts complained of by Tway occurred when he was experiencing personal marital difficulties and as a consequence thereof had some attendant emotional problems which affected his judgment.

The committee recommended that Tway be suspended from the practice of law for a period of one (1) year and recommended certain conditions upon his readmittance.

When both Tway and the Idaho State Bar filed exceptions to the recommended disciplinary action, the controversy came before the Court and was duly argued by respective counsel. The Bar argues that the Court should adopt the position taken by some courts that the presumptive sanction for the misuse of client funds is disbarment and, accordingly, should impose that sanction. *See, e.g., Matter of Wilson,* 81 N.J. 451, 409 A.2d 1153 (1979) (setting forth disbarment as the presumptive sanction in client fund misappropriation cases). Tway argues that given the facts and circumstances here attendant, a private reprimand should be the sanction.

## II. DISCUSSION

While this Court accords great weight to the findings and recommendations of the hearing committee, we are empowered to reach an independent judgment on the record before us. *Matter of Jenkins,* 120 Idaho 379, 383, 816 P.2d 335, 339 (1991); *Matter of Lutz,* 100 Idaho 45, 49, 592 P.2d 1362, 1366 (1979). The responsibility for ordering suspension or disbarment of an attorney rests ultimately with this Court. *Jenkins; In re Bowen,* 95 Idaho 334, 335, 508 P.2d 1240, 1241 (1973).

█ "Bearing in mind that the purpose of suspension and disbarment proceedings is not to punish, but to protect the public from those who are unfit to perform the duties of an attorney at law[,]" *In re Carter,* 59 Idaho 547, 552, 86 P.2d 162, 163 (1938), we reject the contention that disbarment is always the appropriate sanction for the misuse of client funds. Misappropriation is an extremely serious violation of the

rules of professional conduct, and disbarment concededly is an available sanction; however, it is not preemptive of all other sanctions. Instead, we believe, as other state courts have held in misappropriation proceedings, that it is better to approach a solution on a case by case basis. In that manner, all of the various factors in each case are given proper consideration, and we will reach the result best suited for the individual, the bar, and the public. *Lipson v. State Bar of California,* 53 Cal.3d 1010, 281 Cal.Rptr. 775, 780, 810 P.2d 1007, 1012 (1990); *Matter of Salvesen,* 94 Wash.2d 73, 614 P.2d 1264, 1265 (1980); *see Louisiana State Bar Ass'n v. Hinrichs,* 486 So.2d 116, 120 (La.1986).

█ Turning to the facts in this case, we note that although Tway violated the rules of professional conduct, the misstatement to the court was made in the heat of the moment, in an attempt to keep his client out of prison. Furthermore, Tway told the court that he held the money in "trust," not in a "trust account," and that although the money was not in a trust in the strict sense of the word, Tway believed he possessed the money and was willing to forego applying the money to his fee so that his client could use it to pay restitution and thus avoid imprisonment. As to the $1,221.24 held in trust, the client was paid the entire amount, even though Tway was entitled to a portion of that money for his legal services. Additionally, the client was repaid before the institution of the bar proceedings. As to the money Tway used to avoid foreclosure on his home, that was done with the expectation that additional funds from a third source would replenish the trust account. It has not been shown here that Tway was possessed of an intent to permanently deprive the money from the client. Also, the client did receive all of her money. Additionally, the acts constituting the prohibited business transactions were done at the instigation of the client. Tway did not intend to take advantage of the client, nor did he do so. And even though there was no writing documenting the loan, Tway did not attempt to avoid his responsibility when the client's surviving spouse

asked him to restructure the terms of the loan.

The committee found that Tway was undergoing personal and emotional problems caused by the break up of his marriage of twenty years duration and, further, that the acts in question took place over only a relatively short period of time, whereas for more than twenty-five years while Tway had been practicing law, he had enjoyed the respect of the legal community for his abilities, and he had also enjoyed a good reputation in the community for honesty and fair dealing.

In light of the above, we conclude that disbarment in this instance is not merited; rather, we perceive that a suspension which is conditioned on proper conditions relative to reinstatement will serve both to protect the public and to preserve confidence in the judicial system, the function of the bar association, and the profession of law. We do not, however, accept the committee's recommendation of a one (1) year suspension given the serious misconduct by Tway.

### III. ORDER

Tway is suspended from the practice of law for two (2) years. After serving the suspension, he may apply for reinstatement pursuant to ISBCR 518. Tway shall not be reinstated to the practice of law unless he meets the following conditions: (a) that he arrange to be supervised by a member in good standing of the Idaho State Bar in the management of his trust account for a period of one (1) year from and after reinstatement; (b) that he take and pass the Multistate Professional Responsibility examination; (c) that he shall have paid all monies due and owing to the surviving spouse under their agreement; (d) that he reimburse the Idaho State Bar for the costs and expenses of investigating and prosecuting this action; and (e) that Tway obtain a payment bond which satisfactorily guarantees all client funds received by Tway.

An appropriate order will issue.