28 P.3d 363

**IDAHO STATE BAR, Plaintiff–
Respondent,**

v.

**David A. FRAZIER, Defendant–
Petitioner.**

No. 26132.

Supreme Court of Idaho,
Boise, January 2001 Term.

June 22, 2001.

Frederick G. Loats, Coeur d'Alene, for petitioner.

Michael J. Oths, Idaho State Bar Counsel, Boise, for respondent. Michael J. Oths argued.

SCHROEDER, Justice.

David A. Frazier (Frazier) seeks review of findings of fact, conclusions of law and recommended sanctions of the Hearing Committee of the Professional Conduct Board (hearing committee) of the Idaho State Bar (ISB) which recommended that he be suspended from the practice of law for three years for professional misconduct.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Frazier was admitted to practice law in Idaho in 1966 and has been in private practice in Coeur d'Alene as a sole practitioner

since 1968. He married Donna Frazier (Donna) in 1977. Donna worked in Frazier's law office from 1979 until 1998 and was in charge of the clerical work, including maintaining client records and billing. Donna and Frazier separated in 1995 and were divorced in 1998. Donna allegedly had drug and alcohol problems. As the record reflects, it is apparent that Donna was responsible for some of the problems that confront Frazier in this case.

Frazier was trustee of the Frank C. Weber Trust from 1971 through 1998, when the trust was distributed. Frank Weber was the father of Carol Bastian (Bastian). Following Weber's death, Bastian received $475 per month from a brokerage in Spokane, Washington, called Murphy–Favre. Bastian lived in a house owned by the Weber Trust located in remote Lakeview, Idaho. She had a life estate in the house. Bastian died in 1991, and Frazier became the personal representative of her estate.

Bastian's personal property was located in the house at the time of her death, except for some jewelry and coins that were in a safety deposit box in Coeur d'Alene. Bastian's personal property was worth between $42,000 and $115,000. The estate also included real property worth approximately $15,000 and the security account at Murphy–Favre valued at approximately $400,000.

Frazier stored pieces of Bastian's jewelry in a briefcase under a desk in his office. He locked the office unless a staff member was present. In late 1996 he was told, and later discovered, that some of the items of jewelry had been stolen. Additionally, he left some of Bastian's watches at a local jewelry store for approximately one year for an appraisal.

Following Bastian's death in 1991, Frazier received the monthly $475 check from Murphy–Favre. Frazier testified that he instructed Donna to put the check in the trust account. Approximately thirty-three of the checks were not deposited into the trust account. Some were deposited in other accounts and some were negotiated. Donna cashed one of the checks at a local bar. Several checks were drawn from the trust account and made payable to Frazier with the words "fees and costs owed" written on them.

During the time that Frazier served as personal representative of the Bastian estate he handled a claim submitted against the estate by Richard and Deborah McKinney for services allegedly rendered to Bastian during her lifetime. The claim was eventually settled in 1994 with payment of $5,500 from the estate. Frazier had represented in a letter to the beneficiaries of the estate that he could defend the case at trial for $3,500 and through an appeal for an additional $2,000.

The court handling the Bastian estate removed Frazier as personal representative in February of 1997, pursuant to a petition filed by Edwin and Catherine Fulwider, beneficiaries in Bastian's will. The court concluded that Frazier neglected to perform the duties of personal representative and mismanaged the estate. In the six years following Bastian's death Frazier had not filed an inventory of the estate assets as required by I.C. § 15–3–706. Carolyn Justh (Justh), an attorney in Coeur d'Alene, handled the Fulwider's petition.

Frazier did not prepare a billing statement for his services for the estate until 1997, after his removal as personal representative. That billing statement disclosed a fee of $101,562.50, plus costs of $3,079.79. There is no distinction made in the billing statement between services rendered as a personal representative and those rendered as an attorney. Frazier commonly charged $100 per hour in 1991, but he charged $125 per hour on the billing statement produced for the estate in 1997, dating back to 1991. Dena Brunk (Brunk), a former secretary and billing assistant for Frazier, testified that Donna had her go through the estate records in order to create entries on the billing statement consistent with dates on which the file disclosed there had been activity and to raise the billing time when warranted. Brunk also testified Donna told her to raise the rate to $125 on the account.

A settlement was reached between Frazier and the beneficiaries of the Weber Trust and Bastian estate in August of 1998. The commingling of assets and payments of the Weber Trust obligations by the Bastian estate monies was resolved with the payment of $5,000 from the Bastian Estate to the Weber

Trust. Frazier also agreed to pay the sum of $35,000 to the Bastian Estate and its beneficiaries for withdrawal of estate funds which exceeded that to which he was entitled. The agreement provided that it would be disclosed to the ISB.

The ISB filed a complaint on December 17, 1998, alleging Frazier committed professional misconduct. Frazier answered, and a hearing was held August 23 and 24, 1999. The hearing committee determined that Frazier had committed acts of professional misconduct and recommended sanctions to the Professional Conduct Board. Frazier objected to the findings and recommendations of the hearing committee in accordance with Idaho Bar Commission Rule (I.B.C.R.) 511(n).

## II.

## STANDARD OF REVIEW

"In an attorney discipline case, the Idaho State Bar must establish charges of misconduct by clear and convincing evidence." *Idaho State Bar v. Tway*, 128 Idaho 794, 797, 919 P.2d 323, 325 (1996), *citing Idaho State Bar v. Daw*, 128 Idaho 80, 82, 910 P.2d 752, 754 (1996). In reviewing a hearing committee decision, this Court conducts an independent review of the record and the evidence. *Defendant A v. Idaho State Bar*, 132 Idaho 662, 664, 978 P.2d 222, 224 (1999). The Court gives considerable weight to the findings of the hearing committee; however, the Court is not bound by them. *Warner v. Stewart*, 129 Idaho 588, 592, 930 P.2d 1030, 1034 (1997). The burden is on the attorney petitioner to show that the evidence does not support the hearing committee's findings. *Tway*, 128 Idaho at 797, 919 P.2d at 325.

## III.

## THE HEARING COMMITTEE DID NOT ERR BY DENYING FRAZIER'S MOTION TO DISMISS CLAIMS BASED UPON IDAHO RULES OF PROFESSIONAL CONDUCT 1.3, 1.5, 1.7, 1.15.

Frazier claims that because the ISB did not prove that an attorney-client relationship existed between him and the complaining parties, the alleged violations of *Idaho Rules of Professional Conduct* (I.R.P.C.) 1.3, 1.5, 1.7, 1.15 do not apply, because the rules apply strictly to attorney-client relationship situations. Frazier cites to cases in Colorado and Washington where courts have held that attorney-client relationships do not exist in estate proceedings. However, two of the cases cited deal with malpractice liability,[1] and the third case [2] is a probate proceeding.

Frazier's case is distinguishable because the complaining party is the ISB, not a beneficiary to an estate or a plaintiff in a malpractice action. This is a disciplinary action, not a civil action. This Court recognized in *Warner v. Stewart*, 129 Idaho 588, 593, 930 P.2d 1030, 1035 (1997), "there are rules which deal with the relationship between the attorney and the client and there are also rules that apply to the conduct of an attorney apart from the attorney-client relationship." This holding does not stand for the proposition that the rules of professional conduct do not apply to attorneys in certain situations if an attorney-client relationship does not exist. Rather, professional conduct is "defined as all 'conduct which occurs within or without the attorney-client relationship which constitutes misconduct or conduct reflecting on a lawyer's fitness to practice law.'" *Id.*, *citing* I.B.C.R. 501(m). The ISB is simply attempting to use Frazier's conduct in the Bastian estate to evidence his misconduct and fitness to practice law.

In essence what Frazier is asking the Court to find is that once an attorney's client dies, if the attorney has no attorney-client agreement with the beneficiaries of the estate, the attorney has no further obligation under the rules of professional conduct, that is, no obligation to act diligently, to charge the estate a reasonable fee, to manage the estate without conflict or to safely store the property of the estate. Such an interpretation is erroneous.

---

1. *Hill v. Boatright*, 890 P.2d 180 (Colo.Ct.App. 1994), and *Trask v. Butler*, 123 Wash.2d 835, 872 P.2d 1080 (1994).

2. *Matter of Estate of Brooks*, 42 Colo.App. 333, 596 P.2d 1220, 1222 (1979).

While Frazier argues that he was not acting in an attorney capacity, his answer to the ISB complaint admitted "[t]he allegations that David A. Frazier acted as Personal Representative and attorney in conducting the affairs of the Estate of Carolyn Weber Bastian, commencing March, 1991, are admitted." Frazier testified that he chose to act as both personal representative and attorney for the Bastian Estate. In his fifty-three page bill, Frazier billed all of his services under the heading of "attorney fees," specifically, 812.5 hours at $125 per hour, totaling $101,562.50. There is no differentiation within the billing statement of what tasks were undertaken in Frazier's personal representative capacity or attorney capacity, and there is no differentiation in what Frazier charged for his services. By acting as an attorney for the estate, Frazier necessarily agreed to represent the interests of the beneficiaries, and he charged them for his services by subtracting his fees from the estate that was to be distributed to them. The hearing committee was correct in denying Frazier's motion to dismiss.

## IV.

### THE HEARING COMMITTEE ERRED IN ADMITTING AS EVIDENCE A SETTLEMENT AGREEMENT EXECUTED BETWEEN FRAZIER AND THE BENEFICIARIES OF THE BASTIAN ESTATE.

■ The hearing committee considered the settlement agreement between Frazier and the Bastian estate whereby he agreed to repay $35,000 in fees in its consideration of the claim that he breached a fiduciary duty to the estate. Frazier argues the hearing committee erred in admitting the agreement because it violated I.R.E. 408.[3] Frazier therefore contends that since there is no admissible evidence supporting the decision that he charged excessive fees, the finding should be reversed.

The rules of evidence apply during bar disciplinary procedures. I.B.C.R. 522(e). The Idaho Rules of Evidence provide that a settlement agreement may not be offered into evidence to prove liability. Idaho Rule of Evidence (I.R.E.) 408. "The rule does not require exclusion, however, 'if the evidence is offered for another purpose, such as proving bias or prejudice of a witness.'" *Perry v. Magic Valley Medical Center*, 134 Idaho 46, 57, 995 P.2d 816, 827 (2000), *citing* I.R.E. 408.

The hearing committee overruled Frazier's objection to the agreement's admission and the chairman stated that "[t]he settlement agreement does contain admissions against interest that we believe are admissible. I think you can develop in your own questioning, Mr. Loats, whether those admissions against interest pertain to this claim or not. It appears to me at this point in time, anyway, the Settlement Agreement is a separate claim and not the claim at hand, so I am going to admit the Settlement Agreement."

■ An admission against interest is not an exception to I.R.E. 408. The rule excludes the admission of a settlement agreement into evidence to prove liability. No other purpose for its admission has been identified. The settlement agreement should not have been admitted into evidence nor considered in determining Frazier's culpability.

■ The issue regarding specific notation in the agreement, that it is not to be held confidential from the ISB, does not render the document admissible to prove liability, though the agreement may be utilized as a mitigating factor in considering sanctions

---

**3.** I.R.E. 408 states: "Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. Compromise negotiations encompass mediation."

to be imposed, if liability is established from other evidence.

## V.

## THERE IS CLEAR AND CONVINCING EVIDENCE THAT FRAZIER CHARGED EXCESSIVE FEES FOR SERVICES PERFORMED.

▆ The complaint alleges that the fees charged by Frazier were excessive for the work performed in violation of I.R.P.C. 1.5 (Fees), I.R.P.C. 1.15(a)[4] (safekeeping property) and I.R.P.C. 8.4(c)[5] (dishonesty, fraud, deceit, misrepresentation). The ISB also addressed the allegation that Frazier submitted an itemized billing based upon fabricated entries in violation of I.R.P.C. 3.3 (candor towards the tribunal), I.R.P.C. 3.4 (fairness to opposing party and counsel) and I.R.P.C. 8.4(c) (dishonesty, fraud, deceit, misrepresentation).

The ISB did not offer evidence that $125 per hour for attorney services was per se excessive in violation of I.R.P.C. 1.5. Rather, the ISB blends the claim of excessive fees with the claim that Frazier fabricated entries to make up for the funds already taken out of the estate trust account. The hearing committee determined the fees at issue to be excessive based on the idea that a fee billed for a service that may or may not have been provided, i.e., inflating and/or fabricating billing entries, is not reasonable.

The hearing committee's conclusion was first based on a list of checks payable to Frazier from the Bastian Estate from 1991 through 1997. The ISB claims that Frazier treated the estate money as his own, without first preparing or presenting a billing statement. The register alone represents twelve pages of check entries from the Bastian Es-

tate trust account made payable to Frazier. The check register discloses several large checks paid from the account to Frazier's office, including two checks over $7,500 on April 15, 1992 and 1993.

The ISB claims that these withdrawals were made randomly. Based on the hearing committee's determination that no billing statement had been produced for the Bastian Estate until 1997, Frazier had no way of knowing if fees and costs had been incurred to cover the amounts being withdrawn from the trust account.

The ISB also claims that Frazier's billing statement was excessive and reconstructed in order to justify payments to his firm. This finding is apparently based on testimony of Frazier and Carolyn Justh that they did not see a written billing statement for the Bastian Estate until late 1997, and possibly the testimony of Dena Brunk, Frazier's former independent contractor "secretary," that Donna fabricated the billing statement and "pocketed" clients' money. Both Frazier and Brunk testified that Donna was wholly responsible for fabricating the billing statements.

The hearing committee found that Frazier violated the rules of professional conduct even though the evidence suggests that his wife Donna was responsible for misappropriating client funds. The hearing committee held that Frazier was ultimately responsible for client funds, i.e. that he knew or should have known what was going on or made inquiry into the matter. This Court has held that an attorney's conduct in failing to properly maintain client funds in a trust account is a violation of I.R.P.C. 1.15, regardless of whether the attorney personally misappropriated the client funds. *Tway*, 128 Idaho at 799, 919 P.2d at 328.

---

4.  I.R.P.C. 1.15(a) states: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Idaho. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of representation."

5.  I.R.P.C. 8.4 states: "It is professional misconduct for a lawyer to:" (c) "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Frazier testified that Donna had told him on at least four occasions that there was a billing statement for the Bastian Estate account. Frazier testified that on more than one occasion he looked at Donna's computer entries to verify the billing statement's accuracy, and on those occasions the section noting "balance due" to Frazier exceeded the amount of the check drawn on the account. There is limited evidence to support the allegation that Frazier actually knew about Donna fabricating the billing. Dena Brunk stated that on one occasion when Donna was talking to her about raising the rate on the bill from $100 to $125 to make up for spent funds, that Frazier was in the same room, although not involved in the conversation.

The ISB asserts that because the settlement agreement entered into by Frazier and the Bastian Estate beneficiaries states that Frazier withdrew $35,000 from the Bastian Estate to which he was not entitled, the hearing committee could reasonably determine that those fees were in excess of what he had earned, i.e., not reasonable. However, that agreement should not have been considered since it was inadmissible.

Amidst all the "he said, she said" facts in this case, there is an underlying fact—the $101,562.50 fee to close the Bastian estate was excessive. There is nothing in the evidence that justifies a fee of this magnitude for the work involved in the estate. This was an estate of approximately $500,000 with no peculiar legal difficulties aside from the one complaint against the estate. Frazier had indicated that he could represent the estate through trial and appeal for $5,500. The case settled. This leaves nearly a $100,000 charge for work on an estate that dragged on for years without resolution, lacking the fundamental of filing a required inventory in a six-year period. The court supervising the case removed Frazier as personal representative for mismanagement of the estate. Since Frazier did not differentiate in his billing between his duties as attorney and personal representative, the mismanagement must include his functioning in both capacities. Whatever weight is placed upon the method of creating a billing statement or the timing of withdrawals, the conclusion must be that fees in excess of $100,000 for mismanaging an estate that another attorney was required to close, were significantly in excess of what was reasonable.

## VI.

### THE HEARING COMMITTEE DID NOT ERR IN FINDING THAT CLEAR AND CONVINCING EVIDENCE ESTABLISHED THAT FRAZIER FAILED TO SAFEGUARD JEWELRY OF THE BASTIAN ESTATE.

The hearing committee found that Frazier violated I.R.P.C. 1.15, by keeping jewelry in a briefcase in his office for an inordinate amount of time and leaving watches at the jewelry store for appraisal for an unreasonable amount of time. Though the hearing committee found that Frazier did not violate I.R.P.C. 1.15 by keeping Bastian's jewelry in a briefcase underneath the desk in his office, it did find that he violated the rule by keeping it there for over a year. He also left pieces of Bastian's jewelry at the jeweler's for over a year which he had initially taken in to be appraised. It was reasonable to conclude that although safekeeping property in a given manner for certain period of time may be acceptable, keeping it there indefinitely is not.

The complaint alleged that Frazier kept the property in an insecure manner and that he could not account for the whereabouts of certain items of Bastian's property. Over an extended period of time the risk to the property logically and necessarily increases whether it be risk of theft, risk of losing track of the property, the risk of commingling the property with another clients' property or the risk of simply losing the property. Indeed, several pieces of jewelry were stolen from the briefcase during the time Frazier was acting as personal representative. He had to be told of the thefts by another person before he discovered that the property was missing.

The conclusion that Frazier failed to safeguard the items left in his possession is supported by clear and convincing evidence.

## VII.

## THE HEARING COMMITTEE ERRED IN FINDING THAT CLEAR AND CONVINCING EVIDENCE ESTABLISHED THAT FRAZIER REPRESENTED A CLIENT WHEN HE REASONABLY BELIEVED THAT THE REPRESENTATION WOULD ADVERSELY AFFECT THE RELATIONSHIP OF ANOTHER CLIENT.

The ISB contends there is no dispute that Frazier billed anywhere from $11,000 to $14,000 of fees and costs from the Weber Trust to the Bastian Estate. The ISB claims that Frazier had no right to commingle the funds and such handling was a conflict of interest. The ISB couches the conflict of interest allegations against Frazier in terms of billing and/or commingling of assets. However, the focus of I.R.P.C. 1.7 is geared towards conflicts of interest in regard to representation, that is, will the representation of one client be directly adverse to another client? Given the circumstances of the situation, it is apparent that cooperation was required between the two estates, as their closures were dependent on certain steps taken with the other, and in many instances joint actions were necessary. In fact, it appears that having separate representation for the two estates may have complicated matters.

There is no evidence that the interests of the two estates were not in alignment with one another. Instead, the ISB contends that there was a conflict of interest because of the allegation that Frazier commingled funds of the two estates or incorrectly billed one estate for the costs and fees of the other. These actions may be a factor in determining a conflict of interest, but by themselves they are billing errors, a failure to safeguard property, or unreasonable billing, not a conflict of interest.

## VIII.

## THE HEARING COMMITTEE DID NOT ERR IN FINDING THAT CLEAR AND CONVINCING EVIDENCE ESTABLISHED THAT FRAZIER FAILED TO SAFEGUARD FUNDS OF THE BASTIAN ESTATE.

The ISB maintains that because Frazier was collecting the Murphy–Favre checks for over six years, totaling over $30,000, he should have put the funds in some type of interest bearing account. The ISB also contends that even if Frazier was not aware of what his wife was doing with the checks, after he learned that at least one check had gone into the office account instead of the estate account, he should have taken steps to find out the extent of the problem.

I.R.P.C. 1.15(a) "requires Idaho attorneys to hold the funds of their clients which are in their possession in connection with case representation in a separate account maintained in the state of Idaho." *Tway*, 128 Idaho at 799, 919 P.2d at 328. Carolyn Justh testified that thirty-three of the Murphy–Favre checks were not deposited into the Bastian Estate trust account but went into other accounts or were negotiated at local establishments. In his defense Frazier testified that Donna told him there was a billing statement for the Bastian Estate trust account. Frazier testified that on more than one occasion he looked at Donna's computer entries to verify their accuracy, and on those occasions the section noting "balance due" to him exceeded the amount of the check drawn on the account.

The funds of the Bastian Estate were not held exclusively in a trust account. Failure to safekeep a client's funds in such an account is a violation of I.R.P.C. 1.15(a), and pursuant to this Court's holding in *Tway*, Frazier is responsible for such a misappropriation irrespective of his participation. *Tway*, 128 Idaho at 799, 919 P.2d at 328, *cf. Defendant A v. Idaho State Bar*, 134 Idaho 335, 2 P.3d 144 (2000) (Defendant A argued that his secretary had deposited the client funds in his personal account by mistake,

nevertheless he was found to have violated I.R.P.C. 1.15(a) and was subject to sanction.).

There is clear and convincing evidence to substantiate a finding that Frazier violated I.R.P.C. 1.15(a), by failing to keep Bastian Estate funds in a trust account.

## IX.

## THE SANCTION

The hearing committee has recommended a three-year suspension for Frazier's violations. Frazier points out that he has been a member in good standing of the Idaho State Bar for thirty-three years and that at his age suspension for three years is the equivalent of a professional "death sentence."

### A. Standard of Review

Attorney discipline matters are judicial versus administrative in nature with the responsibility of "assessing facts and ordering sanctions to be imposed on an attorney ultimately resting with the Supreme Court." *Idaho State Bar v. Gantenbein*, 133 Idaho 316, 319, 986 P.2d 339, 342 (1999), *citing Dexter v. Idaho State Bar Bd. of Comm'rs*, 116 Idaho 790, 780 P.2d 112 (1989). Although the Court places great weight on the findings and recommendations of the hearing committee regarding sanctions, "it is ultimately the responsibility of this Court to determine the sanctions available" to the ISB. *Tway*, 128 Idaho at 799, 919 P.2d at 328, *citing Daw*, 128 Idaho at 82, 910 P.2d at 754.

The purpose behind attorney discipline is not punitive, but to "protect the public from those who are unfit to perform the duties of an attorney at law ... and is intended to deter future misconduct." *Gantenbein*, 133 Idaho at 319, 986 P.2d at 342. In determining what discipline is appropriate in a given situation, the Court must review all relevant factors "including the nature of the violation, mitigating and aggravating circumstances, the need to protect the public, the courts and the legal profession and the moral fitness of the attorney." *Id.* Sanctions should be imposed on a case by case basis with all factors in each case given proper consideration, the court should "reach the result best suited for the individual, the bar, and the public." *Matter of Tway*, 123 Idaho 59, 61, 844 P.2d 688, 689 (1993), *citing Lipson v. State Bar of California*, 53 Cal.3d 1010, 281 Cal.Rptr. 775, 810 P.2d 1007, 1012 (1991); *Matter of Salvesen*, 94 Wash.2d 73, 614 P.2d 1264, 1265 (1980).

### B. The Sanction

There is some benefit in looking at what the Court has done in the past in assessing the appropriate sanction in this case. In *Matter of Tway*, 123 Idaho 59, 844 P.2d 688 (1992), Tway was found to have violated I.R.P.C. 1.15 (safekeeping of client property), I.R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), I.R.P.C. 3.3(a)(1)(making false statements to the tribunal) and I.R.P.C. 1.8 (entering into business transaction with a client). Tway admitted that he removed his client's funds from a trust account to avoid foreclosure on his home, that he made misrepresentations to the court regarding the whereabouts of the client funds and that he entered into business transactions with the client using the client funds. *Matter of Tway*, 123 Idaho at 60, 844 P.2d at 689. The Court rejected the contention that disbarment is always the appropriate sanction for misuse of client funds. *Matter of Tway*, 123 Idaho at 61, 844 P.2d at 690. The Court noted that Tway, who had practiced law in the community for more than twenty-five years, enjoyed a reputation of truthfulness and honesty and that during the time period at issue he was experiencing personal marital difficulties. However, given the serious misconduct of Tway, this Court ordered that he be suspended from the practice of law for two years and imposed conditions for his re-entry into practice. *Matter of Tway*, 123 Idaho at 62, 844 P.2d at 691.

In *Matter of Jenkins*, 127 Idaho 408, 901 P.2d 1309 (1995), two attorneys were found to have violated I.R.P.C. 1.3 (reasonable diligence and promptness) and I.R.P.C. 1.4 (keeping a client reasonably informed) in three separate cases, one of which was dismissed due to a statute of limitations issue. In that case this Court found that a sixty-day

suspension was reasonable. *Matter of Jenkins*, 127 Idaho at 419, 901 P.2d at 1320.

In *Idaho State Bar v. Tway*, 128 Idaho 794, 919 P.2d 323 (1996), Tway was found to have violated I.R.P.C. 1.4 (keeping a client reasonably informed), I.R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation) and I.R.P.C. 1.15(a) (safekeeping of client property). Tway had been disciplined previously for similar conduct resulting in suspension from the practice of law. *Tway*, 128 Idaho at 799, 919 P.2d at 328. This Court held that the public interest would best be served by the imposition of a five-year suspension.

In *Defendant A v. Idaho State Bar*, 132 Idaho 662, 978 P.2d 222 (1999), Defendant A was found to have violated I.R.P.C. 1.15(a) (safekeeping of client property) by improperly holding and not promptly delivering a client's deed of trust until the client paid a family member's bill. Defendant A was privately reprimanded by the ISB and this Court found the sanction appropriate for the violation. *Defendant A*, 132 Idaho at 666, 978 P.2d at 226.

In *Defendant A v. Idaho State Bar*, 134 Idaho 335, 2 P.3d 144 (2000), Defendant A was found to have violated I.R.P.C. 1.15(a) (commingling client funds with his personal checking account). Defendant A argued that his secretary had deposited the client funds in his personal account by mistake, however Defendant A failed to discover the commingling error. This Court held that Defendant A "clearly should have been aware that some extra money had come into his personal checking account, which should have caused him to make further inquiry." *Defendant A*, 134 Idaho at 337, 2 P.3d at 146. The Court found that a private reprimand by the ISB was appropriate for the violation.

Frazier has committed the various violations outlined in this opinion. They are serious violations that call into question the need to protect the public from future misconduct. On the other hand, Frazier has been a member in good standing with the ISB for over 33 years. At the times in question he has had marital difficulties and was burdened with his wife's alleged drug and alcohol problems.

Frazier has agreed to reimburse the Bastian estate for overcharges.

Of the cases considered by the Court, Tway's first disciplinary proceeding is the closest. Tway's misconduct was more egregious than Frazier's. The Court suspended Tway for two years and imposed conditions upon his reentry to the practice of law. *Matter of Tway*, 123 Idaho at 62, 844 P.2d at 691.

## X.

## ORDER

Frazier is suspended from the practice of law for one year. After serving the suspension, he may apply for reinstatement. Frazier shall not be reinstated unless he meets the following conditions: (a) that he arrange to be supervised by a member in good standing of the Idaho State Bar in the management of his trust account for a period of one year after reinstatement; (b) that he take and pass the Multistate Professional Responsibility examination; (c) that he shall have paid monies due and owing under the settlement agreement; and (d) that he reimburse the Idaho State Bar for the costs and expenses of investigating and prosecuting this action. An appropriate order will issue.

Chief Justice TROUT, Justices WALTERS and EISMANN, and Justice Pro Tem COPSEY, concur.