44 P.3d 1141

**In the Matter of Steven H. Warrick, Attorney At Law.**

**IDAHO STATE BAR, Plaintiff–Respondent,**

v.

**Steven H. WARRICK, Defendant–Petitioner.**

**No. 27350.**

Supreme Court of Idaho, Boise, February 2002 Term.

March 22, 2002.

Rehearing Denied April 30, 2002.

Hollifield and Bevan, Twin Falls, for petitioner. William R. Hollifield argued.

Michael J. Oths, Bar Counsel, Boise, for respondent. Julia A. Crossland argued.

WALTERS, Justice.

This is an attorney disciplinary case. Steven Warrick appeals from a decision rendered by the Professional Conduct Board of the Idaho State Bar ("ISB") finding that Warrick violated Idaho Rule of Professional Conduct ("I.R.P.C") 4.4(a) concerning expressions of bias and I.R.P.C. 3.3(a)(4), relating to presentation of false evidence. We uphold the Board's findings. We impose on Warrick a sanction of thirty days suspension from the practice of law. We further order that Warrick pass the Multistate Professional Responsibility Examination as a condition for reinstatement to active practice. Finally, we award costs to the ISB for this proceeding.

## FACTS AND PROCEDURAL BACKGROUND

Steven Warrick was admitted to the practice of law in Idaho in 1983. He was elected as the Elmore County Prosecutor in 1996 and served until April 1, 1998. As such, Warrick was in charge of prosecuting Ronald E. Calfee, a.k.a. Ted Hulsey Hungate ("Calfee") for one count of felony trafficking of methamphetamine, a case from which both counts of Warrick's alleged misconduct stem.

On February 3, 1998, a jury trial for Calfee was vacated at the request of Calfee's attorney, Mr. Purviance, on the ground that the State had failed to timely disclose a witness, Scott Spaulding, whom the State intended to call during the trial. The hearing to vacate Calfee's trial followed disclosure by a deputy prosecutor that Spaulding had entered into a plea agreement in exchange for his testimony against Calfee. The terms of the plea agreement were that Spaulding would plead guilty to four of nine felony charges pending against him, that the State would recommend

eight-year unified sentences with retained jurisdiction (even though the punishment on each charge potentially was life imprisonment), and the State would move to dismiss the remaining five counts. The deputy assigned to Spaulding's case informed Warrick of the plea agreement, but did not disclose the portion of the agreement regarding the sentence recommendation.

On February 18, 1998, Warrick was at the Elmore County law enforcement building, which houses the jail where Calfee was incarcerated. Warrick wrote the words "waste of sperm" and "scumbag" next to Calfee's name on the inmate control board. This incident eventually was reported to the ISB as a professional conduct violation.

On March 3, 1998, Calfee's trial began before a jury with District Judge Michael R. McLaughlin presiding. Warrick called Spaulding as his second witness. After Warrick asked a few introductory questions, Spaulding's testimony in front of the jury proceeded as follows:

Q. Now, just as a preliminary matter, you are currently incarcerated, sir?

A. Yes, sir, I am.

Q. And what is—what have you been charged with?

A. I've been charged with multiple felonies leading to four counts of Delivery, one count of having something to do with child endangerment, and then Possession of a Controlled Substance, I believe.

Q. Okay. And why is it that you've chosen to testify in this matter?

A. Because I'm wishing to kind of like turn my life around and get away from all of this, and I feel this is a good place for me to start.

Q. Are you receiving any sort of break or any sort of break in terms of your own prosecution because of this?

A. Very little, from what I understand.

On cross-examination by defense counsel, Spaulding testified as follows:

Q. And what sort of deal have you worked out with the State to testify here today?

A. At this point, nothing.

Q. Okay. The State hasn't offered you any sort of break in your sentencing or anything like that to testify?

A. No, sir, nothing will be guaranteed me. I came forward on my own free will.

The prosecutor, Warrick, conducted re-direct examination but did not inquire further about the plea agreement and then excused Spaulding as a witness.

Later that afternoon, Spaulding's arraignment was held before Judge McLaughlin. Spaulding pled guilty to four of nine felony counts and five were dismissed at the recommendation of the deputy prosecutor. Judge McLaughlin inquired as to when the plea bargain had been presented to and accepted by Spaulding. He was advised by the deputy prosecutor that the plea agreement had been negotiated a month previously. Judge McLaughlin then placed the State on notice that Spaulding's testimony given to the jury earlier that day at Calfee's trial was contrary to what was being presented at Spaulding's arraignment. Mr. Purviance, Calfee's defense counsel, was also present at Spaulding's arraignment and, based upon what transpired at the hearing, immediately prepared and filed that afternoon a motion to dismiss the charges against Calfee in the interests of justice under Idaho Criminal Rule 48.

When Warrick found out that the motion to dismiss had been filed and that Spaulding had entered guilty pleas pursuant to the plea agreement, Warrick met with Spaulding that evening to discuss testimony for Calfee's trial the next morning. Warrick planned to recall Spaulding as a witness and to disclose the terms of the plea agreement that had been omitted from Spaulding's earlier testimony during Calfee's jury trial.

The next morning, the second day of Calfee's trial, the district court heard Calfee's motion to dismiss. Warrick disclosed that he was prepared to have Spaulding retake the stand and testify as to the terms of the plea agreement. However, the district court granted the motion to dismiss and ended Calfee's trial without further testimony.

On April 9, 1998, District Judge Joel D. Horton presided over a hearing to determine if the dismissal of the charges against Calfee should be with or without prejudice. Judge Horton determined that the case would be dismissed with prejudice and that jeopardy had attached, thereby barring Calfee's retrial.

As a result of the incidents in Elmore County, complaints against Warrick were filed with the Idaho State Bar. The ISB proceeded with a formal disciplinary action. In Count I of the ISB's complaint, ISB alleged that Warrick violated I.R.P.C. 4.4(a) and 8.4(d) for writing offensive words on the inmate board at the Elmore County Jail about a defendant he was prosecuting. Count II of the complaint alleged Warrick violated I.R.P.C. 3.3(a)(4), 3.8(d), 8.4(c) and 8.4(d) for failing to take reasonable remedial measures when his witness, Spaulding, gave false testimony in the criminal matter that Warrick was prosecuting against Ronald Calfee. Warrick filed his answer denying the ISB complaint. The matter was assigned to the Professional Conduct Board for hearing.

ISB moved for summary judgment and Warrick filed a cross-motion for summary judgment. The Board issued its Order on Summary Judgment, partially granting ISB's motion with respect to Count I finding that Warrick had violated I.R.P.C. 4.4(a). The Board also partially granted Warrick's motion for summary judgment as to Count I finding that Warrick did not violate I.R.P.C. 8.4(d). The Board found that genuine issues of material fact existed on all of the allegations contained in Count II.

On November 14, 2000, a hearing was held on the Count II allegations. Following the hearing, the Board issued Findings of Fact and Conclusions of Law finding that Warrick had violated I.R.P.C. 3.3(a)(4), but the Board did not find violations of I.R.P.C. 3.8(d), 8.4(c) or 8.4(d). The Board then recommended that Warrick should receive an informal admonition pursuant to Idaho Bar Commission Rule 506(g) for the Count I violation of I.R.P.C. 4.4(a) and a public reprimand pursuant to Rule 506(e) for the Count II violation of I.R.P.C. 3.3(a)(4). The Board also recommended that no costs would be awarded. Both parties seek review of the Board's decisions.

## ISSUES PRESENTED

1. Whether writing the words "waste of sperm" and "scumbag" on the inmate control board is a violation of I.R.P.C. 4.4(a), and is 4.4(a) intended to cover such conduct?

2. Whether Warrick was representing a client when he wrote the words on the inmate control board?

3. Whether there was clear and convincing evidence that the words written by Warrick appealed to or engendered bias in the local law enforcement officers?

4. Whether there is a violation of I.R.P.C. 4.4(a) when there is no evidence that the words were observed by or were directed to a third person?

5. Whether there is clear and convincing evidence that the words were written with the intent to embarrass, delay or hinder a third person?

6. Was there clear and convincing evidence that Warrick knowingly offered false evidence?

7. Was Warrick's failure to correct Spaulding's misleading testimony during direct examination and redirect examination a violation of I.R.P.C. 3.3(a)(4)?

8. Was Spaulding's testimony false?

9. Did Spaulding actually know the details of the plea agreement?

10. When questioned about his sentencing, did Spaulding falsely testify that there were "no guarantees"?

11. Did the Board incorrectly conclude with respect to Court I that Warrick's conduct did not violate I.R.P.C. 8.4(d) in addition to I.R.P.C. 4.4(a)?

12. Did the Board incorrectly conclude with respect to Count II that Warrick's conduct did not violate I.R.P.C. 3.8(d), 8.4(c) and 8.4(d) in addition to 3.3(a)(4)?

13. If the Board's decision that professional conduct violations occurred is

upheld, what is an appropriate sanction to be issued in this matter?

14. Should the ISB recover its expenses and costs incurred in this proceeding?

## STANDARD OF REVIEW

When an attorney discipline action is reviewed by this Court, the Court independently examines the record developed before the Professional Conduct Board to determine whether the evidence supports the findings and recommendations of the Board's hearing committee. *Idaho State Bar v. Frazier*, 136 Idaho 22, 25, 28 P.3d 363, 366 (2001). The Court will examine the hearing committee's decision to determine if it is clearly erroneous or arbitrary and capricious. Idaho Bar Commission Rule 509(c)(9). The findings of the hearing committee are entitled to great weight. *Idaho State Bar v. Gantenbein*, 133 Idaho 316, 319, 986 P.2d 339, 342 (1999). The burden is on the petitioner to show that the evidence does not support the hearing committee's findings. *Frazier*, 136 Idaho at 25, 28 P.3d at 366 (citing *Idaho State Bar v. Tway*, 128 Idaho 794, 797, 919 P.2d 323, 325 (1996)). This Court bears the ultimate responsibility for determining what sanctions should be imposed on an attorney for violating the Idaho Rules of Professional Conduct. *Defendant A v. Idaho State Bar*, 132 Idaho 662, 664, 978 P.2d 222, 224 (1999).

## DISCUSSION

### I.

### Count I

### A. I.R.P.C. 4.4

Warrick argues that the Board erred by granting summary judgment to ISB and finding that he violated I.R.P.C. 4.4(a) by writing the words "waste of sperm" and "scumbag" on the inmate control board. To support this argument, Warrick asserts that he was not representing any client at the time of the incident and the rule contemplates acts by a lawyer during the course of his representation of a client. He contends that there was no communication or means directed by him to inmate Calfee or to a third person intended to embarrass Calfee or a third person.

To the contrary, ISB argues that it is irrelevant whether Calfee was embarrassed or injured by the words written on the inmate control board. ISB contends that there does not have to be an actual showing of bias and that the rule only requires a demonstration that Warrick intended to appeal to or engender bias. ISB asserts that the focus of I.R.P.C. 4.4 is upon professionalism not upon injuries that may be sustained by a recipient of the communication.

I.R.P.C. 4.4 states, in relevant part:

**Rule 4.4—Respect for Rights of Third Persons**

In representing a client, a lawyer shall not:

(a) use means that have no substantial purpose other than to embarrass, delay, or burden a third person, including conduct intended to appeal to or engender bias against a person on account of that person's gender, race, religion, national origin, or sexual preference, whether that bias is directed to other counsel, court personnel, witnesses, parties, jurors, judges, judicial officers, or any other participants.

The Idaho Rules of Professional Conduct are based upon the Model Rules of Professional Conduct recommended by the American Bar Association. The ABA comments to Model Rule 4.4 state that the model rule focuses upon "the substantial 'purposes' of the action rather than its effect." ABA Annot. Model Rules of Prof'l Conduct R. 4.4 cmt. (1996). The former ABA Rule 4.4 focused on effect and forbade an attorney from acting when the attorney knows or it is obvious that the action would harass or maliciously injure another. *Id.* The Board in this case properly considered the purpose rather than the effect of Warrick's conduct. In partially granting ISB's motion for summary judgment, the Board found that

the clear evidence shows that Warrick wrote derogatory and offensive words, that this conduct had no substantial purpose other than to embarrass the inmate and appeal to or engender bias in the local law

enforcement officers for whom the offensive words were intended.

We find that this is a clear violation of I.R.P.C. Rule 4.4(a)....

The Board's determination is based upon undisputed facts. Warrick admitted that he wrote the words "scumbag" and "waste of sperm" on the inmate control board next to Calfee's name. At the time, Warrick was representing the state of Idaho in a criminal action being prosecuted against Calfee as a party. Warrick contended that the words were meant to humor the law enforcement officers and that only a few people saw the words and the words were never conveyed to or seen by Calfee.

Although Warrick claims he meant the words for humor, the conduct was inappropriately aimed at Calfee, a party in a pending action being prosecuted by Warrick on behalf of the State. Despite the fact that Calfee did not see the words, nor were the words conveyed to Calfee, their purpose could only have been to demean Calfee in the eyes of others. The evidence shows that Warrick clearly used means that had no substantial purpose other than to embarrass Calfee and was intended to engender bias in the local law enforcement personnel.

This Court holds that the Board properly granted summary judgment to ISB on Warrick's violation of I.R.P.C. 4.4(a).

### B. I.R.P.C. 8.4(d)

In its brief on appeal, ISB asserted that Warrick's inappropriate comments with regard to Calfee violated I.R.P.C. 8.4(d), as well as rule 4.4(a), since his actions were prejudicial to the administration of justice. However, at oral argument ISB counsel conceded that if this Court found a violation of I.R.P.C. 4.4(a) with respect to Count I, that there was not a need to address this additional allegation. Therefore, this Court will not discuss whether there was a violation of I.R.P.C. 8.4(d).

### II.

### Count II

### A. I.R.P.C. 3.3(a)(4)

■ Warrick contends that he complied with I.R.P.C. 3.3(a)(4) because he did not knowingly offer false testimony when Spaulding was called as a witness in Calfee's trial. Warrick argues that once he became aware of the false testimony, he proceeded to undertake reasonable steps to correct the situation, and he intended to call Spaulding the next morning of the trial to remedy Spaulding's testimony. Further, Warrick asserts that the duty to take remedial measures lasts throughout the duration of a trial.

ISB argues that it did not charge Warrick with intentionally offering false testimony. Rather, ISB asserts that it charged Warrick with allowing false testimony to be presented without taking any measures to correct the testimony at the time the testimony was presented. ISB contends that the rule contemplates that the lawyer take remedial measures at the time he comes to know of the falsity, not the next day or before the end of trial. The rule, in pertinent part, is as follows:

**Rule 3.3—Candor Toward the Tribunal**

(a) A lawyer shall not knowingly:

. . .

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

The Board found Warrick knew that a plea bargain had been offered to Spaulding whereby five of nine felony counts would be dismissed, in return for his testimony against Calfee. The Board further found that "during the presentation of Spaulding's testimony at the trial of Calfee, Steven Warrick failed to correct Spaulding's denial of the plea agreement which he knew was false." Warrick disputes that he was aware of the falsity of Spaulding's testimony at the time the evidence was presented. He submits that he was not paying attention to the testimony given and was focusing on the next set of

questions he was going to ask Spaulding. Warrick further represents that had he realized Spaulding had testified falsely, he would have used leading questions to elicit the information.

Warrick asserts that he did not know of the falsity of Spaulding's testimony until a fellow prosecutor alerted him after Spaulding's arraignment before Judge McLaughlin in the afternoon following the close of the first day of Calfee's trial, when the circumstances of the plea bargain were disclosed, and the district court put the State on notice that false testimony had been presented in Calfee's trial. Warrick's arguments, however, are unavailing. The Board found that he knew Spaulding's testimony was false at the time it was presented, and the Board's findings are supported by the record.

Warrick contends that once he became aware of the false testimony given by Spaulding, he took reasonable remedial measures to correct the testimony. Warrick visited Spaulding in the jail following his arraignment, and planned to call Spaulding to the witness stand the next morning. Warrick argues that he was prepared to correct Spaulding's testimony on the second day of trial, however, a mistrial was granted before the remedial testimony could be presented.

Again, Warrick's arguments are misplaced because they ignore the factual finding by the Board concerning the timing when Warrick knew Spaulding's testimony was false. He knew it was false when the testimony was presented, and at that time he did not take any action to correct the testimony. Waiting until after the district judge and defense counsel learned the testimony was false was not reasonable.

This Court holds that Warrick did not take reasonable remedial measures to correct Spaulding's testimony. Warrick thereby violated I.R.P.C. 3.3(a)(4).

### B. I.R.P.C. 3.8(d), 8.4(c) and 8.4(d)

ISB contends that Warrick's conduct should also be found to violate I.R.P.C. 3.8(d) and 8.4(d) for failing to make timely disclosures of the plea agreement to defense counsel. ISB additionally argues that Warrick

should have been found to have violated I.R.P.C. 8.4(c) for failing to advise the court, defense counsel and the jury of Spaulding's false testimony, and that such an omission constitutes a misrepresentation to the court.

Again, ISB counsel conceded at oral argument that this Court need not address the additional allegations of misconduct if a violation of I.R.P.C. 3.3(a)(4) occurred with respect to Count II. Therefore, this Court will not address the remaining allegations.

### III.

### Sanctions

The Board recommended two sanctions: an informal admonition for violation of I.R.P.C. 4.4(a) and a public reprimand for violation of I.R.P.C. 3.3(a)(4). ISB suggests that the sanction should be based upon the totality of the offenses rather than for each individual offense as the Board proposed. Furthermore, ISB contends that an informal admonition and public reprimand is not commensurate for Warrick's conduct. ISB recommends that Warrick be suspended from the practice of law in Idaho for one year, especially in light of his heightened duties as a prosecutor when the violations occurred.

Warrick argues that he did not violate any of the rules of professional conduct. However, if he is found to have violated any of the ethical rules, he believes that the informal admonition is an appropriate sanction. Warrick contends that his conduct, with regard to Spaulding's testimony, was not intentional and does not warrant suspension, which is reserved for protecting the public from attorneys who are unfit to perform the duties of an attorney.

Disciplinary sanctions are provided for in the Idaho Bar Commission Rules, the pertinent sanctions are as follows:

**RULE 506. Sanctions.**

Disciplinary sanctions may consist of any one or more of the following:

(b) **Suspension.** Suspension is the denial of the right to practice law in the State of Idaho for a specific period of time not to exceed five (5) years, and thereafter

until reinstatement as provided for by these Rules.

. . . .

(e) Public Reprimand. Public reprimand is public, verbal and written discipline imposed by the Professional Conduct Board or its designee, which declares the defendant's conduct to have been improper but does not limit his or her right to practice law in the State of Idaho and which shall be published in the official Idaho State Bar publication.

. . . .

(g) Informal Admonition. Informal admonition is private, written discipline imposed by Bar Counsel, which declares the defendant's conduct to have been in violation of the Rules of Professional Conduct and which is included in the lawyer's permanent files, but which is not published. An informal admonition is lesser in scope than a private reprimand, and is the least severe form of discipline available.

The Board recommended that Warrick's conduct in violation of I.R.P.C. 4.4(a) in Count I merited an informal admonition as provided for by Idaho Bar Commission Rule 506(g). As for the violation of I.R.P.C. 3.3(a)(4) in Count II, the Board recommended that Warrick receive a public reprimand pursuant to Idaho Bar Commission Rule 506(e).

ISB determined that Warrick's conduct was serious enough that a private reprimand would not be commensurate and therefore pursued formal charges against him. Once a formal complaint was filed, the matter was no longer confidential and became a matter of public record. See Idaho Bar Commission Rule 521(a)(1).

*In re Daw*, 128 Idaho 80, 85, 910 P.2d 752, 757 (1996), determined whether "a private reprimand is properly within the universe of sanctions available to the Professional Conduct Board." In holding that a private reprimand was not a sanction that could be imposed by the Board, this Court pointed out that the rules provide for a private reprimand to be "imposed by Bar Counsel," and not by the Professional Conduct Board in order to preserve the confidentiality of such

a sanction. *Id. See also* I.B.C.R. 506(f); compare with I.B.C.R. 506(e) (public reprimand is public, verbal and written discipline imposed by the Professional Conduct Board). The Professional Conduct Board merely has the option of affirming or rejecting a private reprimand if imposed by bar counsel. *Daw*, 128 Idaho at 85, 910 P.2d at 757 (citing *Malmin v. Oths*, 126 Idaho 1024, 895 P.2d 1217 (1995)).

A similar rationale should be applied to the informal admonition. As proscribed by Idaho Bar Commission Rule 506(g), an informal admonition is also a sanction that is "imposed by Bar Counsel." This Court holds that the Board was without authority to recommend an informal admonition as a sanction for Warrick's violation of I.R.P.C. 4.4(a).

This Court bears the ultimate responsibility for determining what sanctions should be imposed on an attorney who has been found to have violated the Rules of Professional Conduct. *Defendant A v. Idaho State Bar*, 132 Idaho 662, 664, 978 P.2d 222, 224 (1999). In this case, it appears that a suspension from the practice of law would be appropriate. The purpose of a suspension " 'is not to punish, but to protect the public from those who are unfit to perform the duties of an attorney at law.' " *Daw*, 128 Idaho at 86, 910 P.2d at 758 (quoting *Matter of Tway*, 123 Idaho 59, 61, 844 P.2d 688, 690 (1992) (quoting *In re Carter*, 59 Idaho 547, 86 P.2d 162 (1938))).

As a sanction covering both violations, the Court holds that Warrick should be suspended from practicing law in Idaho for a period of thirty days. This Court further concludes that Warrick must also take and pass the Multistate Professional Responsibility Examination prior to being reinstated to actively practice law in the state of Idaho.

### IV. ○

### Costs

ISB argues that its costs associated with the investigation and prosecution should have been awarded in this disciplinary case. The Board in its decision denied ISB's request. We disagree with the Board and conclude that the ISB should recover its cost of investigation and prosecution of these proceedings in accordance with I.B.C.R. 506(i).

## CONCLUSION

This Court holds that the Professional Conduct Board properly granted summary judgment as to Count I finding that Warrick violated I.R.P.C. 4.4(a). The additional finding by the Board of a violation of I.R.P.C. 3.3(a)(4) relating to Count II is supported by the evidence and is upheld as proper. ISB is awarded its costs and expenses of investigation and prosecution. Steven Warrick is suspended from the practice of law for a period of thirty days. It is further ordered that Warrick must take and pass the Multistate Professional Responsibility Examination prior to reinstatement to actively practice law in Idaho.

Costs on appeal, as well as the costs of investigation and prosecution of the proceeding below, are awarded to the Idaho State Bar.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.