# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38792

IN THE MATTER OF JAY P. CLARK,
ATTORNEY AT LAW.

---

IDAHO STATE BAR,

    Petitioner-Respondent,

v.

JAY P. CLARK,

    Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2012 Term

2012 Opinion No. 113

Filed: July 6, 2012

Stephen W. Kenyon, Clerk

Appeal from Idaho State Bar Professional Conduct Board Hearing Committee.

The Committee's Findings of Fact, Conclusions of Law and Recommendation are <u>affirmed</u>. The Committee's recommendation with regard to sanctions is <u>adopted</u>. Costs are awarded to Respondent.

Larry D. Purviance, Dalton Gardens, for Appellant.

Brad Andrews, Idaho State Bar, Office of the Bar Counsel, Boise, for Respondent

W. JONES, Justice

## I. NATURE OF THE CASE

Jay P. Clark ("Clark"), a licensed Idaho attorney since 1996, appeals the Findings of Fact, Conclusions of Law, and Recommendation filed by the Hearing Committee of the Professional Conduct Board of the Idaho State Bar ("Committee"), which suspended Clark from the practice of law and imposed certain conditions should he ever seek any transfer to an active status license. Clark asserts that the Committee's decisions are not supported by clear and convincing evidence. Clark also contends that the Idaho State Bar ("ISB") violated his due process and First Amendment rights.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Varela's DUI Citation

On the night of May 28, 2005, Mateo Varela ("Varela"), who was eighteen years old at that time, was at a graduation party with some friends. Alcohol was served at the party. Varela

1

admits that he drank alcohol during the party and eventually blacked out. He asserts that he does not remember most of the events that occurred that night.

Upon leaving the party, Ronny Bergh ("Bergh"), Varela's friend, discovered that his truck was missing. Assuming that Varela took his truck because he was the last person seen around it, Bergh and a friend drove to Varela's parents' home. Upon finding Varela with his parents on their front lawn, Bergh inquired about his truck. Varela stated that he did not know where Bergh's truck was and that he caught a ride home with some friends earlier that night.

Varela's parents eventually called the police. An officer arrived at the scene, and located Bergh's truck "down the street in front of 1200 Elm Street" in Mountain Home, Idaho. It was discovered that Varela had Bergh's keys and duffle bag in his possession, both of which were in Bergh's truck when it was taken. Varela's cell phone was later found in Bergh's truck. No one witnessed Varela driving that night. Varela contends that he does not remember driving Bergh's truck home from the party.

When questioned by an officer with the Mountain Home Police Department, Varela initially denied driving Bergh's truck. Upon further questioning, Varela allegedly admitted to driving the truck while under the influence of alcohol, asserting to the officer, "[t]ake me, I drank and I drove home." Varela contends that he does not remember making that admission.

Varela was later arrested for underage drinking. After failing the field sobriety test, Varela refused to undergo a breathalyzer examination. Thereafter, Varela was given a Citation for Driving under the Influence of Alcohol. The Citation stated that Varela refused to take the breathalyzer examination. Varela was also served with a Notice of Suspension for Failure of Evidentiary Testing ("Notice of Suspension"). The Notice of Suspension stated that pursuant to I.C. § 18-8002, Varela's Idaho license would be suspended for refusal to submit to the breathalyzer examination, unless he showed cause why he refused to undergo evidentiary testing at a hearing no later than June 6, 2005, with the Elmore County Magistrate Court. Formal charges were filed on May 31, 2005, by Prosecutor Phil Miller ("Miller") of the Mountain Home Prosecuting Attorney's Office.

## B.   Varela's Retention of Clark

On May 31, 2005, Varela retained Clark to represent him in this matter. Upon allegedly presenting the Citation to Clark and informing him that he refused to take the breathalyzer examination, Varela contends that he told Clark that he wanted a show cause hearing before the

2

magistrate court because he did not want to lose his driver's license, which was a requirement for his job. Varela asserted that Clark agreed to request a show cause hearing at their initial consultation meeting on that day. Clark asserts that during their initial consultation, Varela told him that he did not drive Bergh's truck that night.

Clark admitted that he knew Varela did not want to lose his driver's license. Clark stated that he explained to Varela during that meeting that he had seven days to challenge Varela's refusal to take the breathalyzer examination. He also asserted that he told Varela that he may have sufficient grounds for a show cause hearing because no one witnessed him driving Bergh's truck that night. Contrary to prior statements that he made on the record and the admissions that he made in his Answer, Clark later reversed course and testified that Varela never told him at that meeting that he refused to take a breathalyzer examination because such a "critical issue" would surely have been reflected in his notes.

**C.     Clark Did Not Timely File a Request for a Show Cause Hearing with the Elmore County Magistrate Court On or Before June 6, 2005**

On or around May 31, 2005, Clark filed a plea of not guilty, responses to Miller's discovery requests, and a motion to continue. Clark was served discovery on June 3, 2005, by Miller. Clark never submitted a request for a show cause hearing with the Elmore County Magistrate Court on or before June 6, 2005, pursuant to I.C. § 18-8002(4). Instead, Clark mistakenly filed that request with the Idaho Transportation Department ("ITD"), allegedly on or around June 6, 2005.

On or around June 6, 2005, Varela called the ITD to verify the status of his license. He was informed by ITD staff that his request for a show cause hearing had been sent to the ITD in error. Varela, desperate to avoid a license suspension, thereafter went to Clark's office. Varela testified that at that meeting Clark informed him that the request was properly submitted and that, in any event, a hearing was irrelevant because his request had no merit.

Clark testified that he never intended to request a show cause hearing, asserting that Varela would lie on the stand and that he would be required to resign as counsel as a result. He contends that he came to this conclusion after he received the police report from Miller when he allegedly learned that Varela admitted that he drove Bergh's truck while intoxicated and that his case involved a refusal to take a breathalyzer examination. Clark also testified that he called Varela on June 3, 2005, to advise him that there were no grounds for the show cause hearing based on a review of the police report. Varela denies that Clark called him on that day.

3

Furthermore, the alleged call was not reflected in any billing statement. Again, Clark's testimony contradicts his prior statements that he made on the record and the admissions in his Answer, which generally assert that Clark initially believed Varela's claim had merit and that he knew that Clark refused a breathalyzer examination.

On June 10, 2005, Clark's former assistant, Joni Vann ("Vann"), faxed a letter dated June 6, 2005, to the ITD requesting a hearing on Varela's license suspension. The letter appeared to be signed by Clark and set forth various grounds for the license suspension hearing. A notation on the fax cover page indicated that it may be a duplicate request. Clark testified that he never specifically authorized the ITD request. Instead, he contended that it was a standard form letter that his staff was trained to automatically send as a stop-gap in all DUI cases. Vann was generally authorized to sign letters for Clark and often signed his name on court filings and other documents. Erin Rembert ("Rembert"), Clark's Office Manager, identified the signature on the letter as Clark's signature.

On that same day, Vann also faxed a copy of the letter that she previously sent to the ITD to Miller, asserting on the fax cover page's remark section that the attached letter was sent "in error to the Idaho Transportation Department on June 6." The remark section of the fax cover page further asked whether Miller would object to a show cause hearing even though Clark had not requested a hearing with the Elmore County Magistrate Court. Miller responded on June 20, 2005, contending that "failure to properly present a request for a refusal hearing before the court results in the court losing jurisdiction over the matter."

Clark contends that the June 10, 2005, request and letter sent to Miller were not expressly or impliedly authorized by him, and that Vann sent them to Miller because she felt sorry for Varela. Clark testified that he will not take responsibility for either the letter or request because Vann sent them on her own account. In his Answer, Clark admitted that he authorized the fax and the letter.

**D.     Clark Did Not Engage in Plea Negotiations with Miller**

In response to Varela's visit on June 6, 2005, Clark agreed to plea bargain with Miller in order to withdraw Varela's license suspension because, at that time, Varela's primary concern was keeping his job. Clark testified that he never spoke with Miller in order to pursue a plea bargain because there was no legal cause for a refusal hearing. He further stated that he did not

4

initially pursue a plea because Varela had a better chance of getting a favorable deal the longer his case "languished."

**E.     Varela's Retention of Egusquiza**

On June 20, 2005, Varela terminated Clark's representation and retained attorney Mitchell Egusquiza ("Egusquiza") to represent him in this matter. Egusquiza filed a Notice of Substitution of Attorney on June 28, 2005. Egusquiza thereafter filed a motion for a hearing with regard to Varela's license suspension with the Elmore County Magistrate Court pursuant to I.C. § 18-8002, contending that Clark's erroneous filings with the ITD were grounds for an extension of the June 6, 2005, deadline. The motion was denied on July 22, 2005. Egusquiza thereafter filed a motion to dismiss the criminal DUI charge on July 6, 2005. Varela eventually entered a plea of guilty to the charge of Minor in Consumption. On July 22, 2005, the magistrate court then entered a Judgment of Conviction and an Order Suspending Valera's Driving Privileges for 180 days beginning on June 6, 2005. As a result of the suspension of his license, Varela eventually lost his job.

**F.     Clark Never Produced a Written Fee Agreement for His Representation of Varela**

On or around May 31, 2005, Varela paid Clark a $500 retainer fee for his representation. Varela testified that Clark did not review the basis or rate of the fee with him, and that he does not remember signing any fee agreement. He further contended that, at that time, he understood that the fee included Clark's representation for the license suspension hearing and the underlying DUI charge. Varela also claimed that he did not know whether the fee was refundable or nonrefundable.

Clark testified that Varela signed a nonrefundable fee agreement and that the $500 retainer payment was earned upon receipt. Clark further contended that his staff prepared all fee agreements and that Varela's fee agreement was in Varela's file, which he provided to Egusquiza. Egusquiza testified that Varela's file did not include any fee agreement. Clark has never produced a fee agreement relating to his representation of Varela. Clark asserts that he did provide an example of a typical fee agreement to Varela at one time.

Rembert, who was not employed by Clark during his representation of Varela, testified that Clark prepared all fee agreements. Rembert opined that portions of Varela's file may have been discarded upon the suspension of Clark's practice. In this vein, she stated, "[u]nfortunately, after the office felt that a satisfactory response was given to the ISB in September 2005 on this

5

matter, records were discarded, including some that may have been helpful in this case." She also opined that Varela's fee agreement existed because it was office policy that every client must sign a written fee agreement.

On July 19, 2005, by a formal letter prepared by Egusquiza, Varela requested a refund of the retainer monies paid for Varela's "misgivings" with regard to Clark's handling of his case. On July 22, 2005, Clark claimed that the fee was nonrefundable. He also requested further elaboration of any of Varela's "misgivings."

## G.     Valera's Grievance

On August 15, 2005, Varela filed a complaint with the ISB. Egusquiza helped Varela draft the grievance, gave him legal advice with regard to the grievance, and filed various letters with the ISB in support of Varela's claim. Clark contends that Varela would have never filed the grievance if it were not for Egusquiza, who he contends has deep animosity for him, which stems from their interactions as opposing counsels in the Severson murder trial in Mountain Home. Clark asserts that Egusquiza is part of the "good old boys network" of attorneys in Mountain Home whereas he was the "Lone Ranger." He claims that he closed his practice and was eventually "forced out of town" because of his disagreements with the "good old boys network."

On August 26, 2005, the ISB sent a letter to Clark requesting a response to Varela's grievance. On September 2, 2005, Clark sent Varela a letter to the address that Varela listed on the grievance offering an itemized statement and partial refund in the amount of $218.75. The letter informed Varela that he could pick up the refund at Clark's office. On September 16, 2005, Clark sent another letter to the same address requesting that Varela make an appointment to pick up his refund. Varela testified that he did not reply to Clark's September letters because he did not want to speak to Clark or schedule an appointment.

Clark testified that he never refused to return the unused portion of the $500 fee. He claimed that he did not send a refund check to Varela by mail because his office had three different addresses for Varela. He further asserted that he did not send the check to Egusquiza to forward to Varela because he did not trust Egusquiza.

## H.     The October 7th Affidavit

In a letter dated October 7, 2005, Clark responded to Varela's grievance. The letter included a backdated billing statement, a copy of the backdated refund check issued to Varela, and a proposed affidavit ("the Affidavit"). The copy of the refund check was written by Clark to

6

Mateo Varela, dated June 5th, 2005. When asked why he sent a copy of a check to the ISB instead of the original check, Clark stated, "Well, somebody could have corrected me on that, and I would have been happy to send it again." The billing statement and the check included a $37.50 charge for a phone call from Varela on June 21, 2005, before any refund was requested, but after the check was purportedly written. Clark testified that his staff must have mistakenly prepared the backdated billing statement and check.

The letter stated that the Affidavit was to be presented to Varela "for him to review and sign, which if he does might prevent him from being sued for libel and slander." It further asked the ISB to advise him if Varela refused to sign the Affidavit, so he could consider legal action. The Affidavit consisted of statements that were intended to suggest that Clark did not err in his representation of Varela and that the grievance was prepared by Egusquiza.

Clark claims that the Affidavit is simply a demand letter containing only true statements created to provide Varela with an opportunity to correct the record in order to avoid a lawsuit for libel or slander. In this vein, Clark stated that the Affidavit is "[a] threat in the sense that [Varela] should tell the truth. If he's telling the truth, there's no threat." He elaborated, "[m]y intention [in sending the Affidavit] would be to try to motivate him to tell the truth -- to say, 'You know what? There's consequences for ruining a person's career based on false statements. There should be consequences for that.'" He further stated, "I considered what my full legal authority was and what it is to do, and I still believe I have absolutely [sic] legal authority under the Constitution of the State and the United States to threaten somebody to sue, and that's exactly what the case law says I have the right to do." Varela refused to sign the Affidavit because he claimed the statements in it were not true. He also contended that he would not have filed a grievance with the ISB had he known that he could get sued for libel or slander.

On or around May of 2010, Varela called Clark to reiterate his request for a refund. Thereafter, Clark sent Varela a refund check in the amount of $218.75. Clark discontinued his practice in 2006, and his license to practice law was placed on affiliate status in February of 2010. Clark is now a full time farmer, and he contends that he has no intention of practicing law in Idaho in the future.

The ISB filed its Complaint on May 20, 2009. Clark filed his Answer on July 22, 2009. On March 10, 2010, Clark filed a Motion to Dismiss the Complaint. On April 9, 2010, the Hearing Committee entered its Order Denying Clark's Motion to Dismiss the Complaint.

7

Thereafter, the Committee issued its Finding of Fact, Conclusions of Law, and Recommendation on April 7, 2011, holding that Clark violated I.R.P.C. 1.2, 1.3, 1.5(b), 1.16(d), and 8.4(d). Clark then timely filed his Notice of Appeal on April 27, 2011.

### III. ISSUES ON APPEAL

1.  Whether Clark's due process rights were violated by the delay in filing the Complaint?

2.  Whether the Committee's decisions that Clark violated I.R.P.C. 1.2, 1.3, 1.5(b) and 1.16(d) are supported by clear and convincing evidence?

3.  Whether the Committee's decision that Clark violated I.R.P.C. 8.4(d) infringed Clark's First Amendment rights and is supported by clear and convincing evidence?

4.  Whether the Committee's decision with regard to sanctions is clearly erroneous or arbitrary and capricious?

### IV. STANDARD OF REVIEW

In an attorney discipline matter, this Court will examine the hearing committee's decision to determine if it is clearly erroneous or arbitrary and capricious. *Idaho State Bar v. Everard*, 142 Idaho 109, 112, 124 P.3d 985, 988 (2005). "The misconduct must be proven by clear and convincing evidence." *Wilhelm v. Idaho State Bar*, 140 Idaho 30, 34, 89 P.3d 870, 874 (2004). The disciplined attorney bears the burden of establishing that the evidence does not support the hearing committee's findings. *Idaho State Bar v. Frazier*, 136 Idaho 22, 25, 28 P.3d 363, 366 (2001) (citing *Idaho State Bar v. Tway*, 128 Idaho 794, 797, 919 P.2d 323, 326 (1996)). It is ultimately the responsibility of this Court to assess facts and to determine appropriate sanctions. *Idaho State Bar v. Gantenbein*, 133 Idaho 316, 319, 986 P.2d 339, 342 (1999); *Frazier*, 136 Idaho at 30, 28 P.3d at 371.

### V. ANALYSIS

### A.    Clark's Due Process Rights Were Not Violated by the ISB's Delay in Filing the Complaint

Clark asserts that his due process rights were violated by the ISB's delay in filing the Complaint. Clark further contends that the Findings of Fact, Conclusions of Law, and Recommendation was filed in violation of I.B.C.R. 509(d)(6). With marginal elaboration, Clark also invites this Court to rule on all the relevant issues presented in his prior submissions, including the denial of his Motion to Dismiss.

Clark initially responded to Varela's Grievance on October 7, 2005. Clark points out that he received no further correspondence from the ISB until it filed the Complaint on May 20, 2009, after he closed his practice and allegedly destroyed portions of Varela's file even though

8

he never received a final disposition from the ISB regarding its investigation into this matter. Considering Clark's prior disciplinary history, it is likely that he knew that an investigation into a grievance is not officially closed until he receives a final disposition letter from the ISB. As a result, any loss of exculpatory evidence on the part of Clark regarding the destruction of Valera's file is wholly of his own making. Furthermore, this Court recognizes that it is quite curious how Clark has the ability to produce those portions of Varela's file that suit his needs in this action.

In attorney discipline cases, this Court held that a proponent must show that a delay in filing a complaint hindered an attorney's ability to defend himself or herself. *Everard*, 142 Idaho at 116, 124 P.3d at 992. There is no proof in this case that the delay hindered Clark's ability to defend himself or was intended to gain an unfair tactical advantage. In fact, the delay is mostly attributable to Clark, not the ISB. During the time between when Clark filed his response to Varela's grievance and the filing of the Complaint, the ISB had the daunting task of investigating five other grievances filed between October of 2003 and January of 2006 against Clark by his former clients. All of those grievances were investigated separately, but also together as a group to determine if they presented a pattern of misconduct as per standard ISB procedure. Four of those grievances were concluded with private reprimands.[1] Varela's grievance resulted in formal charges, while the remaining grievance was dismissed by final disposition letter. Therefore, Clark's due process rights were not violated.

With regard to Clark's contention that the ISB violated I.B.C.R. 509(d)(6), that rule provides the general procedure for disciplinary proceedings. Formal charge proceedings, as in this case, are governed by I.B.C.R. 511(h)(1), which reads in relevant part:

(1) *Service on Parties.* The Hearing Committee shall send to the Clerk, who shall serve upon all parties, the findings of fact, conclusions of law and recommendations within 28 days following the conclusion of the hearing.

Idaho Bar Commission Rule 511(h)(1) must be read in context with I.B.C.R. 525(i), which states in relevant part:

(i) Time Requirements. Except as is otherwise provided in these Rules, the time in which any act or any thing is to be done or performed is not jurisdictional.

Therefore, Clark's claim that the Committee violated I.B.C.R. 509(d)(6) is without merit.

---

[1] From July 23, 2004 to February 26, 2009, Clark was issued five private reprimands, which this Court considered in this Opinion.

As for Clark's invitation for this Court to rule on all the relevant issues presented in his prior submissions, this Court will not search the record on appeal for unspecified error. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). To the extent that Clark requests that this Court consider the denial of his Motion to Dismiss with regard to his invitation that this Court rule on all the relevant issues presented in his prior submissions, this Court will not address that denial because it is not an appealable order. *See* I.A.R. 11(a).

**B.     The Committee's Decisions that Clark Violated I.R.P.C. 1.2, 1.3, 1.5(b), and 1.16(d) Are Supported by Clear and Convincing Evidence**

The Committee determined that that there is clear and convincing evidence establishing that Clark violated I.R.P.C. 1.2, 1.3, 1.5(b), and 1.16(d). Clark contends that these decisions are not supported by clear and convincing evidence. For the reasons that follow, this Court holds that the Committee's decisions are supported clear and convincing evidence and are not clearly erroneous or arbitrary and capricious.

*1.     The Committee's Decisions that Clark Violated I.R.P.C. 1.2 and 1.3 Are Supported by Clear and Convincing Evidence*

The Committee held that there was clear and convincing evidence establishing that Clark violated I.R.P.C. 1.2 and 1.3 because he did not diligently pursue his client's objectives by filing a request for a show cause hearing and plea bargain with Miller. Clark contends that the Committee's decisions that Clark violated I.R.P.C. 1.2 and 1.3 are not supported by clear and convincing evidence because filing the request for a show cause hearing would have required him to pursue a frivolous claim without merit in law or fact.

Idaho Rule of Professional Conduct 1.2 addresses the scope of an attorney's representation of his or her client. It states in relevant part:

> (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

Idaho Rule of Professional Conduct 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

10

Clark did not abide by Varela's decisions concerning the objectives of representation and whether to settle the matter. Clark does not dispute that Varela sought his representation primarily for the purpose of avoiding the suspension of his driver's license in order to keep his job. Clark initially told Varela that a request for a show cause hearing had merit. He erroneously filed that request with the ITD on two separate occasions even though he now claims it was frivolous. Instead of being honest with his client and remedying the situation, Clark manufactured an excuse after the fact and later lied to Varela and, eventually, the Committee during his testimony, which contains many contradictions to his admissions in his Answer and his statements that he made on the record. When Varela requested that Clark plea bargain with Miller in an effort to avoid the suspension of his license and keep his job, Clark never engaged in any plea bargaining with Miller even though he assured Varela that he would. As a result of Clark's deceit, Varela lost his right to appeal the suspension of his license and his job.

In his briefs and during oral argument, Clark relies primarily on his contention that filing a show cause hearing with the Elmore County Magistrate Court would be frivolous and that he should not be punished for mistakenly filing that request with the ITD. Regardless of Clark's contentions, it is readily apparent that the Committee's decision was not wholly dependent on Clark's erroneous filings with the ITD. Attorneys are human beings who make mistakes; it is part of the profession. In some cases, it is what an attorney does after a mistake that defines him or her, ethically. In this vein, the Committee was more concerned with Clark's conduct after his erroneous filings when it rendered its decision. The Committee considered the contradictions in Clark's testimony, his inability to recognize the serious nature of these proceedings and to concede facts and issues that were not in dispute, and his constant shifting of blame to his support staff. Thus, the fact that Clark made an erroneous filing with the ITD was only one factor that the Committee considered, and it seems that this was merely a marginal consideration. Had Clark simply been honest with his client, admitted to his mistake and attempted to plea bargain with Miller, this matter would likely not have proceeded as it has to this point.

With regard to Clark's claim that filing a request for a show cause hearing is frivolous, Clark's assertion is preposterous because he filed that request with the ITD on two separate occasions and later sent a fax to Miller requesting a jurisdictional waiver. Although Clark testified that he did not authorize the June 10th fax or letter, this Court is not convinced that

11

Vann took it upon herself to negotiate with Miller. Regardless, in Clark's Answer, he admits that he authorized that fax and letter.

Clark contends that this Court should consider his assertion that he is now a full time farmer who has no intention of ever practicing law in Idaho again, and that upholding the Committee's decision will tarnish his reputation as a farmer. Clark's assertion that he does not intend to practice law is irrelevant because he could seek reinstatement to active status at any time. The record is replete with fabricated documents, contradictions and flat out lies, which the Committee considered when it rendered its decision. If Clark's reputation is tarnished, it will simply be due to his conduct. The Committee's decisions that Clark violated I.R.P.C. 1.2 and 1.3 are supported by clear and convincing evidence and are not clearly erroneous or arbitrary and capricious.

### 2. *The Committee's Decisions that Clark Violated I.R.P.C. 1.5(b) and 1.16(d) Are Supported by Clear and Convincing Evidence*

The Committee held that there is clear and convincing evidence establishing that Clark violated I.R.P.C. 1.5(b) and 1.16(d) because Clark did not properly communicate the scope of his representation and the basis or rate of the fee to Varela, did not enter into a written fee agreement with Varela, failed to promptly refund any advance payment of the unearned portion of the fee, and failed to pay interest on the unearned portion of the fee. Clark contends that the Committee's decision that he violated I.R.P.C. 1.5(b) and 1.16(d) are not supported by clear and convincing evidence because he communicated the scope of his representation and the basis or rate of the fee to Varela via a contemporaneous billing statement. He also contends that Varela did sign a written fee agreement and that he did timely attempt to return the remaining unearned portion of the fee, which was documented in the copy of the purported refund check sent to the ISB.

Idaho Rule of Professional Conduct 1.5(b) states:

> The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

Idaho Rule of Professional Conduct 1.16(d) addresses the termination of representation by a lawyer or his or her client or potential client, and states:

12

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

This Court holds that Clark did not effectively communicate the scope of his representation or the basis or rate of his fee to Varela. Varela testified that he was not aware of the basis or rate of fee or the scope of Clark's representation of him. As mentioned before, Clark's actions with regard to his representation of Varela are contradictory. Clark knew Varela's primary objective in hiring him was to keep his driver's license and job, yet Clark acted contrary to his client's objectives and was not truthful with him throughout his representation. The record establishes that Clark never effectively communicated his strategy to Varela and that he made decisions on his own account, without considering Varela's interests.

Varela does not remember signing any written fee agreement. Egusquiza testified that Clark never provided any fee agreement in Varela's file. Clark has been given ample opportunity to produce Varela's fee agreement. Instead of producing it, he now shifts blame to his support staff, who he contends generally handled those matters, even though Rembert testified that Clark prepared all the fee agreements for his clients. In the alternative, Clark contends that Varela's fee agreement may have been destroyed when he closed his practice or that Egusquiza fraudulently concealed the fee agreement in an effort to discredit him. As mentioned before, Clark knew that the investigation of Varela's grievance was never closed. As a result, he should have taken steps to preserve Varela's fee agreement if it ever existed, which this Court recognizes that it likely did not exist. Therefore, his claims are without merit.

Clark's actions are inconsistent with his assertion that the fee was nonrefundable. In July of 2005, Clark initially responded to Varela's request for a refund by asking why he was entitled to a "non-refundable fee;" but, after Varela filed his grievance, Clark reversed course and wrote two letters to Varela asking him to pick up his partial refund check at his office along with a backdated itemized statement. Therefore, this Court holds that Clark was required to refund the unearned portion of the fee.

Contrary to his prior assertion, Clark never produced a refund check to the ISB to be forwarded to Varela. Instead, Clark provided only a copy of a refund check written to Varela. The check was clearly backdated to June 5, 2005, before Clark was terminated from his

13

representation, which calls into question the legitimacy of that check. When Clark did eventually refund the unearned portion of the fee, nearly five years after Varela made his initial request for a refund, Clark did not include interest. Therefore, this Court holds that the Committee's decisions that he violated I.R.P.C. 1.5(b) and 1.16(d) are supported by clear and convincing evidence and are not clearly erroneous or arbitrary and capricious.

**C.     The Committee's Decision that Clark Violated I.R.P.C. 8.4(d) Did Not Infringe Clark's First Amendment Rights and Is Supported by Clear and Convincing Evidence**

The Committee held that there was clear and convincing evidence establishing that Clark violated I.R.P.C. 8.4(d) by engaging in conduct that is prejudicial to the administration of justice because he made false statements to the ISB in response to Varela's grievance that were inconsistent with the admitted exhibits and testimony and because he threatened Varela in the Affidavit in order to persuade him to withdraw his grievance. Clark contends that the Committee's decision that he violated I.R.P.C. 8.4(d) violated his First Amendment right to defend himself against false statements made by clients or former clients. He also asserts that the Committee's decision that he violated I.R.P.C. 8.4(d) is not supported by clear and convincing evidence.

Clark has no First Amendment right to threaten his former client with a lawsuit. Clark does not provide any convincing argument or authority with regard to this issue. Clearly, the Affidavit was intended to pressure Varela into recanting his allegations of misconduct, which this Court recognizes as conduct prejudicial to the administration of justice. Clark admits that the Affidavit was indeed a "threat." The fact that Clark sent the Affidavit to the ISB is inapposite because Clark requested that it be forwarded to Varela for his signature. Furthermore, Clark made false statements to the ISB in response to Varela's grievance. Clark's testimony, the admitted exhibits, and Clark's prior statements and responses to Varela's grievance are replete with contradictions and fabrications. Therefore, the Committee's decision that Clark violated I.R.P.C. 8.4(d) is supported by clear and convincing evidence and is not clearly erroneous or arbitrary and capricious.

**D.     The Committee's Recommendations With Regard to Sanctions Is Approved**

In reviewing the recommendations of the Committee with regard to sanctions, this Court determines if the sanctions are clearly erroneous or arbitrary and capricious. "This Court must consider the nature of the violations, mitigating and aggravating circumstances, the need to

14

protect the public, the courts and the legal profession, and the moral fitness of the attorney." *See Idaho State Bar v. Souza*, 142 Idaho 502, 506, 129 P.3d 1251, 1255 (2006). Because of the reasons mentioned in the previous sections, this Court holds that the Committee's recommendation with regard to sanctions is not clearly erroneous or arbitrary and capricious. Therefore, this Court adopts the Committee's recommendations in their entirety including, but not limited to, the following terms and conditions.

Clark is suspended from the practice of law in Idaho for a period of three (3) years. Eighteen (18) months of his suspension is withheld upon Clark being granted permission to transfer his license from affiliate to active status under the applicable Idaho Bar Commission Rules.

Before Clark is eligible for transfer or reinstatement to active practice in Idaho, he must receive approval pursuant to I.B.C.R. 304, 305, and 518(b). Prior to transfer to active status or reinstatement, he must also demonstrate that he fully complied with the requirements of I.B.C.R. 516 and 517 and that, during the time between the issuance of this Opinion and Clark's transfer or reinstatement, he passed the Multistate Professional Responsibility Examination. Clark is also required to reimburse the ISB for the costs associated with this appeal and the underlying proceedings, and he must pay Varela $109.37, which reflects the interest due with regard to the unearned portion of the fee.

Upon any transfer or reinstatement to active status, Clark shall be placed on a period of probation for three (3) years upon the following terms and conditions:

(1) If Clark is found to have violated any Idaho Rule of Professional Conduction for which a sanction is imposed for any conduct that occurred between the date of Clark's suspension through the period of his probation, then the withheld suspension shall be immediately imposed.

(2) Clark must conduct his practice in a manner so as to avoid grievances or complaints being submitted to the Board. Recognizing that such grievances or complaints are beyond the control of an attorney, he must also fully cooperate with the ISB in any investigation into such matters.

(3) As a condition of Clark's reinstatement and probation, he is required to maintain errors and omissions legal malpractice insurance during the probationary period, providing at least $100,000/$300,000 coverage in a form and subject to the conditions that the ISB determines is appropriate.

## VI. CONCLUSION

15

Clark's due process and First Amendment rights were not violated. Furthermore, the Committee's decisions regarding I.R.P.C. 1.2, 1.3, 1.5(b), 1.16(d), and 8.4(d) are supported by clear and convincing evidence and are not clearly erroneous or arbitrary and capricious. This Court affirms the Committee's Findings of Fact, Conclusions of Law, and Recommendation, and adopts the Committee's recommendation with regard to sanctions. Neither party requested attorney's fees. Costs are awarded to the ISB.

Chief Justice BURDICK, Justices EISMANN, J. JONES and Justice *pro tem* KIDWELL CONCUR.