IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38215

IN THE MATTER OF BOBBY E.            )
PANGBURN, ATTORNEY AT LAW.           )          Boise, January 2013 Term
--------------------------------------------------------------    )
IDAHO STATE BAR,                     )          2013 Opinion No.  31
                                     )
    Petitioner,                      )          Filed:  February 27, 2013
                                     )
v.                                   )          Stephen Kenyon, Clerk
                                     )
BOBBY E. PANGBURN,                   )
                                     )
    Respondent.                      )

Appeal from the Idaho State Bar Professional Conduct Board Hearing Committee.

The Committee's recommendation that Pangburn be disbarred effective February 1, 2010, is <u>accepted</u> and <u>adopted</u> by this Court.

Bobby E. Pangburn, Eagle, pro se appellant.

Bradley G. Andrews, Bar Counsel, Idaho State Bar, Boise, for respondent.

_____

HORTON, Justice.

This case arises from an attorney's misconduct while representing two clients in Idaho and a subsequent recommendation from the Idaho State Bar (ISB) that he be disbarred. Bobby Pangburn was initially suspended from the practice of law in Idaho on January 31, 2008, for professional misconduct that occurred in Oregon. Before he requested reinstatement, the ISB filed a new complaint alleging misconduct in Idaho. Pangburn and the ISB submitted a stipulation to the Hearing Committee of the Professional Conduct Board (the Committee) recommending further suspension. The Committee recommended that this Court accept the stipulation. This Court rejected the recommendation and remanded the matter to the Committee for "consideration of more significant sanctions." The Committee conducted a new hearing that focused solely on sanctions and determined that disbarment was appropriate. On review before this Court, Pangburn raises several issues, arguing that the Committee's decision to recommend

1

disbarment was arbitrary and capricious, that any sanction should run concurrent with his previous suspension, and that this Court violated his due process rights by remanding to the Committee without holding a hearing. We adopt the Committee's recommended sanction of disbarment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pangburn was suspended from the practice of law in Idaho on January 31, 2008, as a result of reciprocal disciplinary proceedings stemming from misconduct that occurred in Oregon. Pangburn resigned in lieu of discipline in Oregon, and consistent with the Oregon rules, his resignation did not include an admission that he had violated rules of professional conduct.[1] The ISB brought reciprocal disciplinary proceedings in Idaho, which resulted in a five-year suspension, with three years withheld. However, on May 20, 2010, before Pangburn requested reinstatement, the ISB filed a complaint alleging professional misconduct in connection with Pangburn's representation of two Idaho clients, Robert Hall and Robert Illingworth.

These proceeding were not Pangburn's first experience with disciplinary actions in Idaho. In 2001, he was publicly reprimanded by the ISB for violations of the Idaho Rules of Professional Conduct (IRPC), specifically IRPC 1.3 [diligence], 1.4 [client communication], 1.15(d) [safekeeping property], and 8.4(d) [conduct prejudicial to the administration of justice]. In 2003, Pangburn received an informal admonition for a violation of IRPC 1.4. In connection with the Oregon misconduct, Pangburn was found to have committed multiple violations of IRPC 1.2 [scope of representation], 1.3, 1.4, 1.16(d) [duties upon termination of representation], and 8.4(c) [conduct involving dishonesty], and one violation each of IRPC l.5(f) [accounting for fees and costs], and 8.4(d).

The relevant facts regarding Pangburn's representation of Hall and Illingworth follow. Pangburn represented Hall during Hall's prosecution for drug trafficking. Hall ultimately pled guilty to various trafficking charges and admitted to a persistent violator enhancement. He was sentenced to 39 years in prison. Hall, represented by the State Appellate Public Defender's Office, appealed, and his sentence was affirmed. He filed a pro se petition for post-conviction relief. In that petition, he advanced several claims for relief, one of which was ineffective assistance of trial counsel. Even though Hall's petition asserted that Pangburn had previously

---

[1] Under Oregon's disciplinary rules, Pangburn is barred from applying for readmission. In the event those rules are changed in the future, any application for readmission "will be treated as an application by one who has been disbarred for misconduct."

provided ineffective assistance of counsel, the district court appointed Pangburn to represent Hall in the post-conviction proceedings. Pangburn claims to have informed Hall that there was a conflict of interest because Pangburn had served as Hall's trial counsel. Pangburn testified that Hall orally waived the conflict and consented to the representation. Pangburn did not notify the court of the conflict. He then filed an amended petition for post-conviction relief, removing the ineffective assistance of trial counsel claim. The district court eventually dismissed the remaining claims. A different attorney represented Hall in his appeal from the denial of post-conviction relief, and she requested a remand so that Hall could advance his ineffective assistance of trial counsel claim. The request was granted. On remand, the State and Hall's new attorney stipulated that Hall was entitled to limited post-conviction relief consisting of a hearing on Hall's Rule 35 motion to reduce his sentence. At this point, more than four years had passed from the time Hall's first post-conviction relief petition was filed. In the intervening years, the original sentencing judge had retired. After a hearing, the new judge granted Rule 35 relief and reduced Hall's sentence from 39 years down to 18 years.

Several years after his representation of Hall, Illingworth's mother paid Pangburn $12,000 to represent her son in a post-conviction relief matter. The first $2,000 was a flat fee that covered Pangburn's trip to Orofino to discuss the case with Illingworth. The remaining $10,000 was paid as a retainer for Pangburn's representation in the post-conviction case. Shortly after payment of the retainer, Illingworth terminated Pangburn. His mother demanded that Pangburn return the full $12,000. Pangburn, having performed some work on the case, refused to return the money. On July 31, 2006, Illingworth's mother filed a claim with the Client Assistance Fund (CAF), seeking reimbursement. The CAF held a hearing and on June 27, 2007, determined that Pangburn owed Illingworth's mother $7,280. On February 26, 2008, this Court rejected Pangburn's challenge to the CAF's findings. Pangburn did not return the money, so the CAF paid Illingworth's mother $7,280 on March 13, 2008. Pangburn has made no reimbursement to the CAF.

The ISB filed a complaint against Pangburn, alleging multiple violations of the IRPC, including those stemming from his representation of Hall and Illingworth. Bar counsel and Pangburn entered into a stipulation, wherein Pangburn agreed to admit certain violations of the IRPC in exchange for an agreed disposition of an additional 36 month suspension, with 18 months withheld, and three years of probation. This stipulation provided that "if the Hearing

3

Committee of the Professional Conduct Board or the Idaho Supreme Court declines to accept this Stipulation and/or Recommendation, each party has the right to withdraw from this Stipulation and proceed to hearing on the merits." After the Committee entered a recommendation for approval of the stipulation, this Court rejected the stipulation, remanding the matter to the Committee "for the reconsideration of more significant sanctions."

Following remand, Bar counsel and Pangburn entered into another stipulation. In this Pre-Hearing Stipulation, Pangburn admitted facts that constituted violations of the IRPC. With regard to Hall, Pangburn admitted that he had violated IRPC 1.3 [Failing to act with reasonable diligence], 1.7(a) [Conflict of Interest], and 8.4(d) [Engaging in conduct prejudicial to the administration of justice]. In his representation of Illingworth, Pangburn admitted that he had violated IRPC 1.16(d) [Failing to return unearned fees upon termination of representation] and 1.15(d) [Failure to keep property separate until the dispute between the lawyer and client was resolved]. The parties agreed that the sole issue for determination by the Committee would be the appropriate sanction for these violations.

The Committee conducted a hearing on April 4, 2011, to determine the sanction that it would recommend to this Court. Pangburn presented mitigation evidence regarding his standing in the community, earning a teaching degree and securing a job as a high school teacher, and his full cooperation during the disciplinary proceedings. The ISB presented evidence in aggravation, including Pangburn's experience as an attorney, prior disciplinary proceedings, and his multiple offenses.

The Committee issued its decision on July 27, 2011, recommending that Pangburn be disbarred. Pangburn filed a Motion to Alter or Amend and Request for Hearing on August 11, 2011. On November 9, 2011, the Committee denied Pangburn's request for a hearing and his Motion to Alter or Amend, but it did recommend that Pangburn's effective date of disbarment be February 1, 2010.

## II. STANDARD OF REVIEW

We recently outlined the standard of review in attorney discipline cases.

In an attorney discipline matter, this Court will examine the hearing committee's decision to determine if it is clearly erroneous or arbitrary and capricious. The misconduct must be proven by clear and convincing evidence. The disciplined attorney bears the burden of establishing that the evidence does not support the hearing committee's findings. It is ultimately the responsibility of this Court to assess facts and to determine appropriate sanctions.

4

*Idaho State Bar v. Clark*, 153 Idaho 349, __, 283 P.3d 96, 102 (2012) (internal quotations and citations omitted). "The Court gives considerable weight to the findings of the hearing committee; however, the Court is not bound by them." *Idaho State Bar v. Frazier*, 136 Idaho 22, 25, 28 P.3d 363, 366 (2001). Unlike this Court's review of district court cases,

> in an attorney disciplinary action we are guided by different legal principles which require our independent review of the record and assessment of the evidence. In addition, in conducting our independent review and assessment of the record we must apply the clear and convincing burden of proof standard historically required in attorney disbarment and disciplinary actions.

*Matter of Jenkins*, 120 Idaho 379, 384, 816 P.2d 335, 340 (1991).

## III. ANALYSIS

"All attorney discipline cases require a two-step analysis. First, the Court must determine whether the record supports the findings and recommendations, then it must independently determine the sanctions warranted by the facts of the case." *Idaho State Bar v. Souza*, 142 Idaho 502, 505, 129 P.3d 1251, 1254 (2006).

In this case, Pangburn has admitted all of the violations upon which the Committee based its recommendation. Thus, this Court must determine whether the facts, as admitted in the Stipulation and produced at the April 4 hearing, support the Committee's recommended sanction and whether the sanction is appropriate. The Committee considered each violation and consulted the ABA Standards for Imposing Lawyer Sanctions to determine whether any violation warranted a recommendation for disbarment. While the ABA Standards provide a useful reference, this Court does not consider each individual violation in isolation. Rather, we will consider all of the violations as a whole and our determination of an appropriate sanction will reflect "the nature of the violations, mitigating and aggravating circumstances, the need to protect the public, the courts and the legal profession, and the moral fitness of the attorney." *Clark*, 153 Idaho at ___, 283 P.3d at 107 (citing *Souza,* 142 Idaho at 506, 129 P.3d at 1255).

**A. The record supports some, but not all, of the Committee's findings underlying its recommendation.**

Pangburn's current charges all stem from his representation of two clients: Robert Illingworth and Robert Hall. The Committee found that while representing Illingworth, Pangburn violated IRPC 1.15(d) and 1.16(d) for failing to promptly return the portion of the retainer over which there was no dispute. The Committee also found that Pangburn violated IRPC 1.3, 1.7(a), and 8.4(d) in his representation of Hall. The Committee recommended disbarment for the

5

violations arising out of Pangburn's representation of both clients. In the interest of organization and clarity, the circumstances surrounding the representation of each client are treated separately.

Pangburn admitted to violating Rule 1.15(d) and 1.16(d) in his representation of Illingworth. The version of Rule 1.15(d) that was in effect at the relevant time provided that:

> When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute all portions of the property as to which the interests are not in dispute.

Rule 1.16(d) provides:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

In the Pre-Hearing Stipulation the parties agreed that "there is not clear and convincing evidence that the failure to return the unearned fees upon termination of representation involved dishonesty, fraud, deceit or misrepresentation within the meaning of I.R.P.C. 8.4(c) . . . ."[2] However, the Committee found that Pangburn's actions constituted conversion. The ABA Standards for Imposing Lawyer Sanctions advise that disbarment is an appropriate sanction when an attorney converts a client's money. Stds. Imp. Law. Sanct. Standard 4.11. Pangburn argues that because there was no dishonesty, the Committee erred in its finding that he converted the retainer. This argument is without merit.

Illingworth's mother paid Pangburn a total of $12,000 to represent Illingworth in his petition for post-conviction relief. By the time Illingworth terminated the representation, Pangburn had performed some work on the case. So, in addition to the $2,000 flat fee, he also claimed a portion of the $10,000 retainer. However, he did not return the undisputed portion. Illingworth's mother filed a claim with the CAF, and after a hearing, Pangburn was found to owe her $7,280, which he never paid. He agreed to reimburse the CAF, which he never did.

---

[2] Claims payable by the CAF are, by definition, those "resulting from a lawyer's dishonest conduct." I.B.C.R. 601(b). "Dishonest conduct" is defined as conduct "in the nature of theft or embezzlement of money" including refusing to return unearned fees. I.B.C.R. 601(e). However, a finding of dishonest conduct for purposes of adjudicating a CAF claim "is not a finding of dishonest conduct for purposes of professional discipline." I.B.C.R. 605(d)(2)(a).

Pangburn argues that suspension is the correct sanction because his conduct did not involve "dishonesty, fraud deceit, or misrepresentation." However, conversion does not require dishonesty. Rather, it is "any distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise . . . over another's goods, depriving him of the possession, permanently or for an indefinite time." *Wiseman v. Schaffer*, 115 Idaho 537, 540, 768 P.2d 800, 803 (Ct.App. 1989) (quoting *Klam v. Koppel*, 63 Idaho 171, 179-80, 118 P.2d 729, 732-33 (1941)). The act of wrongfully and permanently depriving someone of his property establishes conversion.

Pangburn wrongfully kept $7,280 of Illingworth's mother's money. Although there was a fee dispute, this fact is irrelevant to the question of whether Pangburn's conduct amounted to conversion. Even after the fee dispute was resolved and it was determined that Pangburn should return the money, he failed to do so. Were it not for the CAF, Illingworth's mother would not have been reimbursed. Pangburn has still not reimbursed the CAF. This conduct is manifestly conversion.

In his representation of Hall, Pangburn admitted in the Pre-Hearing Stipulation that he violated IRPC 1.3, 1.7(a), and 8.4(d). The Committee recommends disbarment as a result of these violations because Pangburn

> acted knowingly and intentionally, with the conscious objective or purpose to accomplish a particular result, i.e., the receipt and retention of professional fees, and the concealment of his potential ineffective assistance as trial counsel. In particular, the Defendant failed to act with reasonable diligence in representing Hall, failed to recognize or act upon a patent conflict of interest involving Hall, and, failed to remove himself from Hall's case due to the patent conflict of interest. Further, the Defendant knowingly failed to raise a potential issue in his representation of Hall, due to his conflict of interest, to wit, his ineffective representation of Hall during trial. These failures caused serious or potentially serious injury not only to the client, whose reduction in sentence was delayed approximately five years from 2004 until his sentence was actually reduced in March 2009, but also to the legal profession by diminishing the confidence of the public that lawyers will place their client's interests ahead of their own.

Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Rule 1.7(a) states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Rule 8.4(d) provides that it is

7

professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

As noted above, the Committee found that Pangburn "failed to act with reasonable diligence in representing Hall" and that he "knowingly failed to raise a potential issue in his representation of Hall." The Committee went on to state that "[t]hese failures caused serious or potentially serious injury not only to the client . . . but also to the legal profession . . . ." Pangburn, because of the conflict of interest, consciously elected to remove Hall's claim that he had provided ineffective assistance of counsel from the petition for post-conviction relief, which qualifies as knowingly failing to perform services for a client.

The ABA Standards recommend that disbarment is generally appropriate when an attorney's conflict of interest causes serious or potentially serious injury to a client. Stds. Imp. Law. Sanct. Standard 4.3. Pangburn argues that the Committee's recommendation for disbarment is arbitrary and capricious because his conflict of interest did not cause any injury to Hall and because he disclosed the conflict and Hall orally waived it.[3] First, Pangburn's claim that he obtained an oral waiver prior to representing Hall is irrelevant. Pangburn admitted in the Pre-Hearing Stipulation that he violated IRPC 1.7(a). Consent must be in writing to validly waive a conflict of interest. IRPC 1.7(b). Thus, even if Pangburn did discuss the issue with Hall, an oral waiver does not conform to requirements of the IRPC. By admitting that he violated Rule 1.7(a), Pangburn admitted that he did not fall within the protection of subsection (b). Thus, any argument that disbarment is not appropriate because he obtained an oral waiver is meritless.

Pangburn also argues that disbarment is not appropriate because Hall did not suffer any injury as a result of the conflict of interest and that Hall actually benefitted from his professional misconduct. Pangburn argues that the delay stemming from the conflict of interest resulted in Hall receiving a reduced sentence. Pangburn argues that because Hall's sentence was ultimately reduced, no injury was done to him, making disbarment inappropriate. In a letter to the Committee, the prosecuting attorney on Hall's original case wrote:

> My experience after practicing many years before the original sentencing judge, the Honorable James May, leads me to believe Hall would not have received relief from a Rule 35 motion had one been filed. There was absolutely no reason to grant Hall leniency as the state would have strenuously objected. It was not Judge May's practice to reduce a sentence given the egregious facts in Hall's case that came out in trial. As to the post-conviction claim of ineffective assistance of

---

[3] We note that the Committee found that Pangburn's claim that Hall verbally waived the conflict was not credible.

8

counsel Hall had no facts supporting his claim that would have suggested he would be granted relief as to his sentence. The irony is that Hall actually benefited from Pangburn's failure to file a Rule 35 and by erroneously handling the original post-conviction claim. It allowed Hall a second and third bite of the apple with a different judge (Judge Robert Elgee) and the intervention of time wherein the state made a decision not to allocate additional resources on the case. It would have required a great deal of time and effort to continue litigating Hall's claims even though victory for the state was likely. I therefore entered into a stipulation with post-conviction counsel to allow Hall a nunc pro tunc Rule 35 and allow counsel to argue for a sentence modification in exchange for dropping any further litigation of his post-conviction claims.

The ISB argues in response that the injury was the necessity for four more years of legal proceedings. Essentially, the ISB argues that even though no harm may have been done to Hall, the extended proceedings caused injury in a more general sense.

The ABA standards define injury as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." Stds. Imp. Law. Sanct. Def. "'Potential injury' is the harm to a client, the public, the legal system, or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." *Id*. Although no actual harm was done to Hall as a result of Pangburn's misconduct, the potential for injury to Hall was great. At the time of Pangburn's misconduct, the potential injury was that Hall would never have been able to advance an ineffective assistance of counsel claim related to Pangburn's earlier representation. The potential for injury is great any time a lawyer represents a client despite a conflict of interest without making a full disclosure and obtaining a written waiver. Indeed, the potential for injury to the client is the reason the conflict rules are in place. Here, that potential for injury dramatically increased when Pangburn removed the claim from Hall's petition. Although Pangburn may be correct that Hall was not actually harmed, there was a very high potential for harm at the time.

Pangburn also admitted violating Rule 8.4(d). Rule 8.4(d) establishes that it is misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The ABA Standards advise:

> Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

9

Stand. Imp. Law. Sanct. 6.11. The Committee found that disbarment was appropriate but it did not discuss the specific facts that led to that conclusion. However, as there is no evidence that Pangburn made a false statement or submitted a false document, it can be presumed that the Committee recommended disbarment based on withholding material information, i.e. Pangburn's failure to notify the court of the conflict.

However, the Pre-Hearing Stipulation contains no reference to Pangburn withholding material information or his intent. Likewise, the Committee only makes one general statement regarding intent that "the Defendant acted knowingly and intentionally, with the conscious objective or purpose to accomplish a particular result, i.e., the receipt and retention of professional fees, and the concealment of his potential ineffective assistance as trial counsel." However, with regard to the 8.4(d) violation, there is nothing in the record to support the assertion that Pangburn withheld material information with the intent to deceive the court. Rather, the only evidence produced regarding Pangburn's mental state was from Pangburn himself when he stated he believed Hall had validly waived the conflict of interest. There are no facts supporting a finding that Pangburn intentionally deceived the court. However, as we stated above, this Court looks at all violations together when considering the appropriate sanction.

**B. The Committee properly considered all mitigating factors.**

Pangburn argues that the Committee failed to take into account several mitigating factors including full and free disclosure to the disciplinary board, character or reputation, delay in disciplinary proceedings, imposition of other penalties or sanctions, and remorse. This argument is unsupported by the record. The Committee Decision contains a section listing the aggravating and mitigating factors. After listing all of these factors, the Committee recommends disbarment. Furthermore, in its decision on Pangburn's Motion to Alter or Amend, the Committee addressed Pangburn's argument that it did not properly consider the mitigating factors. The Committee noted that it "devoted a significant amount of time and effort in deciding this case." It further explained that it "did not come [to] its decision lightly and certainly did not come to its decision without a full consideration of all of the facts, including those in mitigation of the Defendant's conduct." The Committee then lists all the mitigating factors that Pangburn alleged they did not consider. Merely because Pangburn disagrees with the Committee does not mean the Committee did not fully consider all of the mitigating factors. We find that the Committee adequately considered all of the mitigating factors in arriving at its recommendation.

**C. The Committee was justified in recommending that the sanction be effective as of February 1, 2010.**

Pangburn argues that any sanction imposed should begin as of January 21, 2008, because that was the agreement contained in the October 6, 2010, Stipulation which, although rejected by this Court, contains an accurate statement regarding when sanctions should take effect. Pangburn argues that normally all charges are brought at the same time. In his case, however, his current suspension is the result of reciprocal proceedings, which were limited to only his misconduct in Oregon. Because the current charges of misconduct in Idaho could not have been brought together with the reciprocal charges, Pangburn argues that the date of any sanction should begin on the same date as his suspension for the reciprocal charges.

That logic may have been sound when the Committee recommended further suspension, but it no longer held true once the Committee changed its recommendation to disbarment. The Idaho Bar Commission Rules state that suspension is "not to exceed five years." I.B.C.R. 506(c). Pangburn received a five year suspension, with three years withheld. The Committee's original recommendation for an additional suspension would run afoul of Rule 506(c) if tacked onto the end of his current suspension. Thus, the Committee appropriately recommended concurrent sanctions. However, that same restriction is not applicable when disbarment is the recommendation. The rules state that "[i]n no event shall a disbarred lawyer make application for admission to the Bar sooner than five years from the effective date of disbarment." I.BC.R. 506(a). Thus, a multi-year suspension followed by disbarment is wholly consistent with the rules. Furthermore, this Court remanded this case for consideration of more significant sanctions. Recommending that sanctions run consecutively rather than concurrently is within the spectrum of more significant sanctions. Pangburn's current suspension was set to end as of February 1, 2010. Thus, this Court accepts the Committee's recommendation that any sanction we impose be effective as of February 1, 2010.

**D. Judicial estoppel does not apply.**

Pangburn argues that the ISB should be estopped from recommending any sanction other than suspension. Pangburn acknowledges that this situation is not exactly akin to judicial estoppel but argues "if the plaintiff's two, inconsistent positions regarding how, why and how long any suspension of my license are not strictly subject to the concept of 'judicial estoppel,' surely the circumstances are close enough."

Judicial estoppel is the concept "that a litigant who obtains a judgment, advantage, or consideration from one party through means of sworn statements is judicially estopped from adopting inconsistent and contrary allegations or testimony, to obtain a recovery or a right against another party, arising out of the same transaction or subject matter." *Heinze v. Bauer*, 145 Idaho 232, 235, 178 P.3d 597, 600 (2008) (citing *Loomis v. Church,* 76 Idaho 87, 93-94, 277 P.2d 561, 565 (1954)). It "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *McKay v. Owens*, 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997). "Judicial estoppel is intended to prevent abuse of the judicial process by deliberate shifting of positions to suit the exigencies of a particular action." *Heinze*, 145 Idaho at 235, 178 P.3d at 600. Essentially, judicial estoppel prevents a party from taking opposing positions to gain an advantage in litigation.

Judicial estoppel does not apply in this case. Judicial estoppel does not apply to administrative proceedings. *Sadid v. Idaho State Univ.*, 38549, 2013 WL 257386, at *5 (Idaho Jan. 24, 2013). Thus, any inconsistent positions taken before the Committee do not implicate the doctrine. However, attorney discipline matters before this Court are judicial in nature, rather than administrative, as we bear the responsibility of assessing the facts and determining appropriate sanctions. *Idaho State Bar v. Souza*, 142 Idaho 502, 505, 129 P.3d 1251, 1254 (2006) (citing *Idaho State Bar v. Frazier,* 136 Idaho 22, 30, 28 P.3d 363, 371 (2001)). Thus, we focus our attention on the effect of the Committee's previous recommendation which we rejected. Neither the ISB nor the Committee obtained an advantage before this Court as a result of the first recommendation. In fact, the only advantage was gained by Pangburn, in that he was relieved from the effect of his earlier stipulation that he had violated the IRPC. Although he once again entered into an agreement with Bar counsel in which he stipulated to having violated the IRPC, that agreement did not result from the earlier recommendation. Indeed, Pangburn entered into the Pre-Hearing Stipulation even though he was fully cognizant that this Court found the earlier recommendation to be unacceptable. Pangburn's assertion of judicial estoppel is without merit.

**E. This Court's rejection of the October 6, 2010 Stipulation did not violate Pangburn's due process rights.**

Pangburn argues that this Court violated his due process rights by rejecting the Committee's first recommendation without granting him a hearing or having the benefit of a complete record when this Court remanded for consideration of more significant sanctions. He

12

makes this argument without citing any authority supporting his position that this Court may not reject the ISB's recommendation and instruct it to consider more significant sanctions.

We can readily dispense with Pangburn's second argument. The first recommendation was accompanied by the entirety of the record of proceedings before the Committee. After review of that record, this Court rejected the recommended sanction.

Pangburn's first argument merits just a little bit more discussion. If this Court had simply rejected the Committee's first recommendation and disbarred Pangburn, his contention would have merit. Instead, this Court remanded the matter to the Committee, indicating the reason for rejection of the recommendation, and providing Pangburn the opportunity to develop a full and complete record in order that we might evaluate an appropriate sanction.

"Procedural due process requires that 'there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when the defendant is provided with notice and an opportunity to be heard.'" *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (quoting *State v. Rhoades*, 121 Idaho 63, 72, 822 P.2d 960, 969 (1991)). The opportunity to be heard must occur at a meaningful time and in a meaningful manner. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 927, 950 P.2d 1262, 1266 (1998). The requirements of due process are flexible and change to meet the needs of the particular situation. *Aberdeen-Springfield Canal Co.*, 133 Idaho at 91, 982 P.2d at 926.

The requirements of due process are met in this case. This Court's remand for consideration of more significant sanctions preserved Pangburn's due process rights rather than violated them. Pangburn had the opportunity to contest each and every allegation of professional misconduct and to present evidence and make arguments as to an appropriate sanction to be recommended by the Committee. The remand gave Pangburn both the opportunity to be heard at a meaningful time and in a meaningful manner and the incentive to present all mitigating evidence available to him. Pangburn took advantage of the opportunity to present evidence and make arguments to the Committee regarding the appropriate sanctions. He had the opportunity to fully brief the issue in front of this Court, and he had the opportunity to appear for oral argument and present his case. We find Pangburn's claimed due process violation to be without merit.

13

**F. The Committee's decisions are not arbitrary and capricious because they were late.**

Pangburn argues that the Committee's decisions following the April 4, 2011 hearing and in response to his Motion to Alter or Amend were "too late to be afforded any weight, let alone 'great weight.'" The Idaho Bar Commission Rules state that the "Hearing Committee shall send to the Clerk, who shall serve upon all parties, the findings of fact, conclusions of law and recommendations within 28 days following the conclusion of the hearing." I.B.C.R. 511(h)(1). With regard to a motion to alter or amend, the rules state that "[t]he Hearing Committee shall consider the motion, and shall, within 14 days of receipt of the motion" grant the motion, deny the motion, or schedule it for a hearing. I.B.C.R. 511(h)(2).

Here, there is no dispute that the decisions were late. However, that does not affect the validity of those decisions. The timing of the decisions is not jurisdictional. I.B.C.R. 525(i) ("Except as is otherwise provided in these Rules, the time in which any act or any thing is to be done or performed is not jurisdictional."). Pangburn asserts that the lateness of the decisions violated his due process rights. However, we are unable to determine that the timing of the decisions had any effect upon Pangburn's ability to be heard at a meaningful time and in a meaningful manner. Rather than indicating the Committee's disregard for Pangburn's arguments, the delay suggests that the Committee grappled with the difficult decision as to an appropriate sanction to recommend to this Court. Thus, we find that the timing of the decisions does not affect the weight this Court gives to the Committee's recommendation.

**G. Based upon our review of the record, we adopt the Committee's recommendation that Pangburn be disbarred with an effective date of February 1, 2010.**

Pangburn asserts that "[t]his Court is obligated to base any sanctions decision on precedent and sanction me as it has sanctioned other attorneys in similar circumstances." Pangburn relies on a single sentence from *Idaho State Bar v. Souza*, in which we stated "There is benefit to looking at what this Court has done in the past in assessing appropriate sanctions in [an attorney discipline] case." 142 Idaho 502, 506-07, 129 P.3d 1251, 1255-56 (2006). The sentence Pangburn relies upon is similar to a statement we made in *Idaho State Bar v. Frazier*: "There is some benefit in looking at what the Court has done in the past in assessing the appropriate sanction. . . ." 136 Idaho 22, 30, 28 P.3d 363, 371 (2001). These statements reflect that prior attorney discipline cases provide this Court with guidance when weighing aggravating and mitigating factors. They do not stand for the proposition that this Court engages in a proportionality analysis in which we are required to compare sanctions imposed in previous

14

cases to the case before us when determining an appropriate sanction. To the contrary, this Court has repeatedly stated that we determine the appropriate sanction on a case-by-case basis. *Souza*, 142 Idaho at 505, 129 P.3d at 1254; *Frazier*, 136 Idaho at 30, 28 P.3d at 371; *Matter of Jenkins*, 127 Idaho 408, 419, 901 P.2d 1309, 1320 (1995); *Matter of Tway*, 123 Idaho 59, 61, 844 P.2d 688, 690 (1992).

We have conducted an independent review of the record and carefully considered the nature of the violations of the IRPC to which Pangburn has admitted and the mitigating and aggravating circumstances, including Pangburn's moral fitness to practice law. We conclude that the need to protect the public, the courts and the legal profession dictates that this Court accept the Committee's recommendation that Pangburn be disbarred.

## IV. CONCLUSION

We accept and adopt the Committee's recommendation that Pangburn be disbarred effective February 1, 2010. Costs are awarded to the ISB.


Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.